No. 20,621.

B. P. BASNETT, *Appellee*, V. THE CHERRYVALE GAS, LIGHT & POWER COMPANY, *Appellant*.

### SYLLABUS BY THE COURT.

1. NEGLIGENCE—*Permitting Gas to Escape—Ignition—Injuries.* A public utility supplying natural gas to the inhabitants of a city is presumed to know the location of its stop-boxes, and where one stop-box in front of a building is connected with old, defective and unused pipes, and another stop-box is connected with the pipes in use, the public utility is presumed to know which of the stop-boxes connects with the pipes that are in use.

2. SAME—*Findings Support Allegations of Negligence.* The jury's finding of negligence, contained in answers to special questions, should be given a liberal interpretation to support the allegations of negligence in the petition. When this rule is applied, the findings of negligence in this case support the allegations of the petition.

3. SAME—*Incompetent Evidence—Not Prejudicial.* A judgment will not be reversed for error in the admission of evidence where it does not affirmatively appear that the evidence prejudicially affected the substantial rights of the party complaining. (Civ. Code, § 581.)

4. TRIAL—*Correct Instructions.* The instructions complained of have been examined and are held to have correctly stated the law.

Appeal from Montgomery district court; THOMAS J. FLANNELLY, judge. Opinion filed February 10, 1917. Affirmed.

*L. P. Brooks,* of Cherryvale, for the appellant.

*Sullivan Lomax,* and *J. A. Brady,* both of Cherryvale, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: The defendant appeals from a judgment in favor of the plaintiff, for damages caused by an explosion of gas. *Casualty Co. v. Power Co.,* ante, p. 563, 162 Pac. 313, arose out of the same explosion.

The defendant was a public utility and was supplying the city of Cherryvale with natural gas. Service pipes extended from the mains of the gas company in the street to stop-boxes in the sidewalk in front of the Ellsworth and Ringle buildings, which stood side by side, in Cherryvale. From the stop-boxes

gas pipes led into each of these buildings. The sidewalk had been raised and made wider in front of these buildings. The stop-box connected with the service pipes supplying the Ellsworth building had been covered by the brick in the sidewalk when the walk was raised. Old, unused, defective pipes leading into one of these buildings were connected with a stop-box that appeared above the sidewalk. A tenant in the Ellsworth building desired to have the gas turned into that building. To do this, the defendant attached a meter in the Ellsworth building. At the time the meter was attached the defendant's workman, Mr. Julian, discovered that the gas was passing through the pipes connected with the meter. After attaching the meter, he turned on the gas at the stop-box showing above the sidewalk. This stop-box was connected with the old, defective pipes. Soon thereafter escaping gas was discovered about these buildings. The day after the meter was attached Mr. Julian, with the owner of the Ringle building and William Hutton, went into the basement under the Ringle building to find the place where the gas was escaping. Mr. Julian lighted a match, discovered a small leak, tightened the pipes, and then lighted another match. An explosion then occurred under both buildings. This explosion blew the glass front of the Ellsworth building into the street. At that time the plaintiff was sitting in front of the Ellsworth building. He was blown into the street and injured.

1. The petition alleged:

"That in years gone by, some business buildings on West Main Street in the City of Cherryvale, were connected with the mains of said gas plant by means of service pipes as above described; that said business buildings were destroyed by fire about the year 1900, and that a new and larger building which is commonly called and known as the Ellsworth Building was erected covering the same lots; which had been occupied by said old buildings; that when the new, or Ellsworth Building, was erected, it was connected with said gas plant as before described, but by a different connection from what had been used for the old buildings; and that the old pipes and connecting valves which had connected the gas main with those old buildings were turned off, but that the old connecting pipes were left under the new, or near thereto; that they were broken off and rusted out so that they would not hold gas if same should be turned thereinto."

There was no allegation that the gas company knew of these conditions. A demurrer to the petition was overruled. Of

this the defendant complains. In *Casualty Co. v. Power Co.* ante, p. 563, 162 Pac. 313, this court said:

"It was the duty of the gas company to know what it was about when it turned on the gas. . . . It was shown that the right stop-box to turn the gas into this building was hidden beneath a brick in the sidewalk, and that the defendant, although the owner of the wrong stop-box by which the gas was turned on and which caused the damage, had given the matter so little attention that it did not know the right stop-box from the wrong one. If public service companies controlling such dangerous commodities as natural gas can escape the consequences of such carelessness, life and property will be subjected to hazard indeed. Clearly the facts adduced in support of plaintiff's cause of action required their presentation to a jury." (pp. 565, 566.)

The defendant is presumed to have known the location of its stop-boxes and to have known which one was connected with the defective pipes. It was not necessary to allege the defendant's knowledge of the conditions described in the petition. Natural gas is a dangerous agency and those who handle it must exercise care commensurate with the danger. In *Hashman v. Gas Co.*, 83 Kan. 328, 111 Pac. 468, this court said:

"Natural gas, as all know, is inflammable and explosive in a high degree—a very dangerous agency—and those who transport it are held to the exercise of great care; they are required to lay and maintain pipes that are safe and secure for transporting gas, and carefully to overlook and inspect the pipes in order to keep them in a safe condition, and to detect and repair any leaks or defects in them." (p. 331.)

See, also, *Murphy v. Gas & Oil Co.*, 96 Kan. 321, 330, 150 Pac. 581; Notes, 32 L. R. A., n. s., 815; L. R. A. 1915 E, 1025; Ann. Cas. 1914 C, 348.)

There was no error in overruling the demurrer to the petition.

2. The petition alleged that—

"Julian carelessly, wantonly and negligently, while he was exploring for leaks as aforesaid, lighted a match under said building. . . . That defendant knew or ought and could have known, by the exercise of ordinary care, that the pipes into which it turned the gas were old, worn out, and open at the ends; that the gas after being turned therinto would accumulate in and under said building and become a nuisance and a menace and dangerous to persons near thereto. . . . That the acts of defendant as aforesaid in turning said gas into said old worn out pipes, and in striking fire under said Ringle Building in close proximity to said Ellsworth Building, and in searching for gas

leaks in such a place with fire, was such as to amount to gross and culpable carelessness, wanton negligence, and reckless disregard of the safety of others."

The jury answered special questions, among which were the following:

"Q. No. 1. Did or did not the defendant know that the pipes into which it turned gas were defective?  A. No. 1.   Yes.

"Q. No. 6. If you find for the plaintiff, state the acts of negligence upon which you base your verdict.  A.  No. 6.  Julian's negligence in not following up course of gas after turning on stop-box, not knowing whether or not he turned on gas from proper stop-box."

The defendant contends that the acts of negligence found by the jury were not alleged in the petition. The answers of the jury did not closely correspond to the allegations of the petition; but the findings of the jury include the alleged negligence of the defendant in turning gas into the defective pipes, if the findings are given a fair and liberal interpretation. According to the findings of the jury, the defendant knew of the condition of the pipes. Mr. Julian turned the gas into those pipes after he discovered that the gas was escaping and then did not make any effort to find the defect. This sufficiently established the negligence alleged in the petition.

3. The defendant insists that there was error in the admission of evidence on behalf of the plaintiff. William Hutton, a witness for the plaintiff, testified as follows:

"Q. You had a suit against the company did n't you, yourself?  A. Yes, sir.

"Q. What became of it?

"Objected to by the defendant as incompetent, irrelevant and immaterial.  Objection overruled.

"A.  Compromised."

If the compromise contained an admission of liability, evidence of the compromise was probably admissible. If the compromise was made to purchase peace and did not contain any admission of liability, evidence of the compromise was probably inadmissible.  (*Colburn v. Groton*, 66 N. H. 151.) The abstract does not show how Hutton's case was compromised. It does not show whether the defendant purchased peace or admitted liability. The presumption is in favor of the ruling of the trial court. If there was error in the admission of that evidence, it comes within section 581 of the

code of civil procedure, directing the appellate court to disregard all merely technical errors and irregularities which do not affirmatively appear to have prejudicially affected the substantial rights of the party complaining. If there was error in the admission of that evidence the error was not substantial and not sufficient to reverse the judgment.

4. The defendant complains of two instructions of the court. One of these instructions reads:

"Where the owner of a building or the tenant of such owner makes application to the gas company to turn on the gas and the gas company or its agent without any special direction as to what, if any, valve shall be turned, assuming to know the proper stop-box and proper valve, proceeds to turn a valve which allows the gas to escape into defective or abandoned service pipes and pipes which do not supply the building, then the act of the company and its agent in so turning the wrong or abandoned valve would be a negligent act, for which, if it resulted in injury, the gas company would be liable."

The other instruction complained of was immaterial under the evidence. Defendant says that the instruction quoted was inconsistent with other instructions given. It was somewhat inconsistent with other instructions, but those other instructions were too favorable to the defendant. The instruction complained of correctly stated the law.

The judgment is affirmed.