No. 24,530.

HOWARD SWAYZEE, surviving Husband and Next of Kin of ELLA SWAYZEE, deceased, *Appellee,* v. THE CITY OF AUGUSTA, *Appellant.*

SYLLABUS BY THE COURT.

1. NEGLIGENCE — *Distribution of Natural Gas — Defective Gas Pipes — Gas Forced into Private Residence of One Not a Customer—Explosion—Death.* A city, which was producing and distributing gas for its patrons within the city, received an application to supply gas for a certain residence and sent its representative to inspect the meter and the connections on the premises. There was a buried cut-off at the curb where gas passed from the main to the service pipe which was out of order and also a cut-off near the meter between the house of the applicant and that of the plaintiff, who had not applied for, and did not desire to use gas. Upon inspecting the meter and

Swayzee v. City of Augusta.

the connections the agent of the city discovered that the pipe leading to the applicant's house in front of the meter was connected with a pipe which led to plaintiff's house and found that it was open and when the gas was turned on for the house of the applicant it would pass unobstruced into the house of plaintiff. The applicant had not made connections with her stoves and the agent for the city informed her that the appliances were all right and that when the connections were made she might turn on the gas. Shortly afterwards the connections were made in the house of the applicant, and the plumber employed by her turned on the gas as the agent of the city had instructed. It passed into the house of plaintiff and later, when his wife came home and struck a match in order to light an oil lamp, an explosion occurred which killed her and caused other injuries. The gas was forced up to the exposed cut-off on the premises and was stored in the service pipe, and the permission given by the city to the applicant to turn on the gas was given without notice to plaintiff or his family, when its agent knew that the pipe leading to plaintiff's house was uncapped and out of order and would leak into the house of plaintiff. *Held*, that the city was guilty of negligence and is responsible for the damages resulting to plaintiff from the explosion.

2. SAME—*Joint Tort—Joint Liability.* Where two or more persons concurrently participate in a wrong, which operates in causing injury to another, all wrongdoers are jointly and severally liable.

3. SAME—*Instructions.* Instructions of the trial court examined and held to be without error.

4. SAME—*Verdict Not Excessive.* The amount awarded to plaintiff as damages is held not to be so excessive as to indicate passion or prejudice on the part of the jury.

Appeal from Butler district court; ALLISON T. AYRES, judge. Opinion filed June 9, 1923. Affirmed.

*N. A. Yeager, R. A. Cox,* both of Augusta, *T. A. Kramer,* and *George J. Benson,* both of El Dorado, for the appellant.

*Clarence R. Sowers, Chester I. Long, Joseph D. Houston, Austin M. Cowan, Claude I. Depew, James G. Norton,* and *W. E. Stanley,* all of Wichita, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action by Howard Swayzee to recover damages sustained by the death of his wife, caused by an explosion of natural gas which it was alleged occurred by reason of the negligence of the city of Augusta in the distribution of gas. The trial resulted in a verdict and judgment in favor of plaintiff, and the defendant appeals.

The city owned and operated a gas plant, with a distributing

system consisting of mains, pipes, meters, cut-offs and other appliances, by which gas was supplied to consumers for domestic and other purposes. One of its mains was placed and passed down the street in front of plaintiff's residence and a service pipe led from this main to a point between plaintiff's residence and what is known as the Stott residence which was about twenty feet north of that of the plaintiff. A cut-off was located at the curbing where the gas passed from the main pipe into the service pipe. This cut-off was placed about eighteen inches underground and was enclosed in a box about four inches in diameter. It was manipulated by a key twenty to thirty inches long with a slot fixed in it which dropped down and opened and closed the stop-cock. The box, however, had been allowed to fill up with dirt to the top and the cut-off could not be reached. It was open, and the gas from the plant was forced into the service pipe leading to the meter between the Stotts and plaintiff's home. This meter had been placed between the two houses and was designed to measure gas used in both with one pipe leading north from the meter to the Stott house and another to the house of plaintiff. There was a stop-cock back of the meter which was on the service pipe and was accessible to anyone that might choose to use it. A cut-off was placed on the pipe leading from the meter to the Stott house but there was none between the meter and plaintiff's house. When gas passed through the meter into the Stott house it necessarily flowed into the plaintiff's house. Plaintiff had not been using gas and had made no application for it. The pipes and fixtures in his house were open and defective and when gas was turned on it leaked into the pipes and accumulated in the home of the plaintiff. This condition and danger was known to the city authorities. Application had been made for gas to be used in the Stott house, and Robinson, the agent of the city, who was employed to keep meters in order and turn on and off the gas according to the demands and needs of patrons, went to the place and tested the meter, and when it was regulated he found that gas passed through it. He learned that the pipes had not been connected with the stoves in the Stott home. He shut off the gas at the cut-off near the meter and informed Mrs. Stott that it was all right to turn on the gas when the connections were made in her house. At that time he understood that when gas was let into the meter for the Stott residence it would leak into plaintiff's house, and also knew of the defective condition of the pipes in plaintiff's house. He did not warn the plaintiff in

any way of the turning on of the gas or of the danger incident to turning it on, and the reason he assigned was that he called there for that purpose but found no one at home. Mrs. Stott employed a plumber, who made the connections with her stove and turned on the gas at the cut-off near the meter, but he did not know of the condition of the pipes leading to plaintiff's house or as to the absence of a cut-off there. Shortly afterwards the wife of plaintiff returned to her home, and when she lighted a match preparatory to lighting her lamp, the accumulated gas exploded with great violence causing injuries from which she died within a few hours after the explosion. The service pipe leading from the main had been installed by the owner of the property, but the meter was owned by the city and the city reserved the right at all times to enter upon the premises of the consumer for purposes of inspection and examination of the meters, pipes, and attachments, and no person was allowed to connect any stove or other appliance without the permission of the city. It was made unlawful by a city ordinance for the owner or any person to turn gas on or through any stop-cock·or cut-off, and that no gas fittings or attachments could be used without the permission of the city and approval of the superintendent of the gas plant.

Upon the recited facts and others brought out at the trial the jury found for the plaintiff, and in response to special questions found, first, that defendant was negligent in failing to shut off the gas at the curb line and, second, in failing to make a special effort to give notice or make repairs where the gas led into plaintiff's residence. The first contention of the defendant is that the negligence, found by the jury, was not pleaded in the petition as amended. In the pleading it was alleged, in substance, that the defendant failed to provide proper stop-cocks and allowed gas to pass into the pipes leading to plaintiff's house without sufficient cut-offs, and without his knowledge or the consent or knowledge of his wife, that it was negligent in providing a meter through which the Stott house and the Swayzee house were both to be supplied, and in allowing a construction that would permit gas to pass unobstructed into plaintiff's house when it was turned into the Stott house, that it was negligent in the provision for and maintenance of a defective system, leaving it in such a condition as to constitute a nuisance and an invitation to heedless persons as well as the occupier of the adjacent property to turn on the gas so that it would flow through the defective and dangerous pipes into plaintiff's residence, when the defendant knew

or should have known of the dangerous consequences likely to follow its negligent conduct, and which defendant might have avoided by the use of proper care and foresight.

While the special findings are not couched in the language of the plaintiff's petition they are fairly embraced in the charges of negligence. Among the charges of negligence was the turning on of the gas or the giving of permission to another to turn it on without proper cut-offs and appliances which would prevent it from endangering the plaintiff's family. One means of protecting them was to cut it off at the stop-cock near the curb line where the service pipe leaves the main. The other cut-offs were upon the surface and could easily be manipulated by anyone so inclined. · Instead of using the buried cut-off at the curb line, which could only be opened by the defendant with a key, it forced the gas into the service pipe up close to the meter where it would pass into the pipe leading into plaintiff's house; further, that its failure to cut off the gas at the curb and allowing it to flow up to the cut-off near the meter, which is aboveground on private property where a consumer or anyone might open or tamper with it at will, was under the circumstances stated, nothing less than negligence. If the gas had been cut off at the curb it would still have been within the control of the defendant and it could have kept it turned off until proper repairs were made and precautions taken for the protection of the plaintiff and his family. We think the evidence and findings on that feature of the case were sufficiently covered by some of the averments of the petition. Likewise, it was negligence to omit to give the plaintiff notice that it had arranged for and directed the turning on of the gas when its agent knew that to turn it on for the Stott house meant danger, destruction, and possibly loss of life in plaintiff's house. It was alleged that it was done without the knowldege or consent of plaintiff. Special findings are to be given a reasonable interpretation, and we conclude that the finding in question sufficiently corresponds with the averments of the petition and points out a specific omission of duty by the defendant.

It is next contended that the evidence was not sufficient to take the case to the jury or to sustain the findings and verdict. These contentions are raised on decisions overruling a demurrer to plaintiff's evidence and also on the motion to set aside the verdict and findings. It is insisted that the service pipe, leading from the curb or property line, and the fixtures, other than the meter, were the prop-

erty and put in at the expense of the owner, whose duty it was to keep them in repair, and that as the gas was turned on by another than the agent of the defendant, it was the duty of the latter to inspect or keep in repair the pipes and appliances on the premises, and it is, therefore, not responsible for the explosion or the injuries resulting from it. The duty to inspect such appliances was imposed upon the defendant and it had specifically reserved the right to go upon the premises of a patron to examine the pipes, cut-offs and other appliances. It owned the meters and did assume supervision of the pipes and fixtures, but whatever may have been the duty of an applying consumer to inspect and see that the appliances were in proper condition, the defendant could not escape liability to the plaintiff. He was not a patron of the defendant and he had no dealings with it. He did not desire to use the gas which plaintiff was distributing and had brought up and stored within a few feet of his house. It was the duty of the defendant to so conduct and distribute its gas as not to imperil the persons or property of third persons who had not applied for it, and when it knowingly thrust its gas upon the property of a third person through a conduit, it is responsible for any injury which reasonably might have been anticipated. In 12 R. C. L. 909, it is said:

"One who applies for gas has the duty to see that his own pipes through which the gas is to be used are in good order and no general obligation on the part of the company can be inferred to inspect such pipes. But if the company knows at the time it turns on the gas, or after turning on the gas becomes aware that there are defects in the pipes, it then becomes its duty to make a proper inspection to ascertain the safety of the pipes before it furnishes or continues to furnish gas through them."

Here the defendant was using the service pipe which had been placed on private property up to the meter and close to the plaintiff's house as a place of storage for its gas. It devolved on the defendant to exercise due care that the gas should not be permitted to escape or pass into openings or places which would cause injury or loss to strangers. There is testimony that the agent of defendant knew of the openings leading from the pipe, in which it was stored, through which gas would flow when it was turned into the Stott house. With knowledge of the leaks and defects he permitted and directed the turning on of the gas by the Stotts as soon as their fixtures were adjusted. He denies that he gave this authority or direction, but the evidence of more than one witness is that the permission or direction

was given, and assuming it to be true, the defendant is responsible to the same extent as if the gas had been turned on by the agent himself. It was contended on the former appeal, in which the sufficiency of the pleadings was considered, that the defendant was not responsible for acts other than of its own agents in turning on the gas. It was there said:

"Natural gas is highly inflammable and highly explosive, and the defendant is required to exercise care commensurate with the danger fairly to be apprehended from its distribution. Under some circumstances the city might not be responsible for acts of a trespasser in releasing gas from a main; but a cut-off exposed to easy manipulation by casual meddlers would not afford reasonably secure confinement for gas which, if the cut-off were turned, would become vagrant in the neighborhood." (*Swayzee v. City of Augusta*, 108 Kan. 785, 788, 197 Pac. 208, 210).

The law of the case was correctly stated in the following instruction given by the trial court.

"If you should find that gas was not being used in plaintiff's residence, and no application for the same had been made by plaintiff, and if, at the time in question, the pipe leading from the meter into plaintiff's residence was not plugged, and gas passing from the meter could pass unobstructed into plaintiff's residence, and if you find that the defendant's servants knew such conditions to exist, it then became defendant's duty to use ordinary care to see that the gas was not permitted to pass through the said meter into plaintiff's home to plaintiff's injury or to the injury of others rightfully in said house, and this is true, whether the city did or did not construct or own the line from the meter to plaintiff's house, and if the defendant through its agents did have knowledge of this situation it should not turn the gas through said meter nor permit third parties to do so, and this is true, whether the city did or did not own or install the lines leading from the meter into said house."

It was the duty of the defendant before permitting the turning on of the gas in the Stott home to exercise due diligence to ascertain the conditions of the pipes leading to the Stott's residence, and to see that there were no openings or leaks leading to the house of the plaintiff by which he or others might be injured, and this duty could not be delegated to Mrs. Stott or others. (*Atlanta Gas Light Co., v. Sams*, [Ga. App.] 116 S. E. 21). It was negligence for the defendant to force its gas up to these houses knowing that there was an opening or defect in them or those connected with them which might injure the plaintiff or third parties who were within the sphere of danger. The liability for such failure was well expressed in *Christo v. Macon Gas Co.*, 18 Ga. App. 454:

"Such a company, before turning on. or permitting to be turned on, gas

for the benefit of a tenant in an apartment house who has applied for it, must use reasonable precautions to ascertain that the pipes in the building are in such condition that gas will not flow into the apartments of tenants who have not applied for it, to their injury; and it is for the jury to say whether or not the company, before permitting gas to be turned on for the benefit of one tenant of an apartment house, used reasonable precautions to ascertain that no harm would thereby result to other tenants who had not applied for it, by the gas escaping into their rooms. In such a case the company cannot deny its liability for injuries resulting from failure to use reasonable precautions, before turning gas into an apartment building, to see that injury could not result from the escape of gas into the rooms of tenants not applying for it, on the ground ,that it had no right to enter upon the premises of the parties not applying for gas for the purpose of making an inspection of the pipes therein. . . . In this case the gas company, when it made the connection for the tenant on the second floor, must have known, or by the exercise of ordinary diligence could have known, that the pipes extended into the plaintiff's apartment on the third floor, and, before turning on the gas, the company should have either ascertained the condition of the pipes in this apartment or by some device have kept the gas from flowing therein." (pp. 455, 456.)

In *Schmeer v. Gas Light Co.*, 147 N. Y. 529, it was held that the gas company could not be held liable for the acts of a stranger in turning gas into its pipes without its knowledge or request, but when it furnishes and places a meter bringing the gas up to it and consents that it may be turned on by a patron, it is its duty to make an examination of the piping and be reasonably assured that gas will not escape upon the premises of those who had not applied for and did not want it. (*Memphis Consol. Gas & Electric Co., v. Creighton*, 183 Fed. 552; *Windish v. Peoples Nat. Gas Co.*, 248 Pa. St. 236; *Southern Indiana Gas Co. v. Tyner*, 49 Ind. App. 475; *Castner v. Takoma Gas & Fuel Co.* [Wash.], 212 Pac. 283; *Reid v. Westchester Lighting Co.*, 196 N. Y. Supp. 471; *Washington Gas Co. v. Dist. of Columbia*, 161 U. S. 316; *Basnett v. Power Co.*, 99 Kan. 716, 163 Pac. 161, and cases cited.)

The contention that Stotts and the plumber employed were negligent in turning on the gas without notifying the plaintiff, and that they and not the defendant were responsible for the explosion, cannot be sustained. . Stott testified that he was not informed and did not know that the gas when turned on would flow into the pipes into plaintiff's house, and Mrs. Stott who had applied for gas said she did not know that gas turned into her house would pass into that of the plaintiff, but even if these parties were negligent in this respect, it would not relieve the defendant who had authorized it

to be done from responsibility. It was manifest negligence on the part of the company, and even if the Stotts were negligent and the negligence of both operated together causing the explosion and injury, the negligence of one would not excuse the others. There is a well-established rule that "where two or more parties by their concurrent wrong-doing cause injury to a third party they are jointly and severally liable." (*Luengene v: Power Co.*, 86 Kan. 866, 122 Pac. 1032, and cases cited.)

Some general criticism is made of the instructions given by the trial court, not all of which were brought into the record, but an examination of the abstracts satisfies us that the issues in the case were fairly submitted to the jury.

There is a complaint that the damages allowed are excessive. The award was $10,000. Mrs. Swayzee was about thirty-one years of age, she was in good health, had borne two children and was faithful and industrious. She was shown to be a good housekeeper and a devoted and efficient wife and mother. It is not easy to measure the financial value of such a wife and mother to the husband and father. It cannot properly be measured upon the basis of the wages of a servant but even if a computation upon that basis were made, it would hardly be said that the verdict was so excessive as to indicate passion or prejudice. There was testimony as to her age and health and her services in the home and as a housekeeper, but none as to the monetary value of the services of a wife and mother. However, if witnesses had been called for that purpose they could have only given their opinions based upon common knowledge, and the jury was as well qualified as they could have been to form an opinion or judgment as to the pecuniary loss. We find nothing to indicate passion or prejudice on the part of the jury in making the award, and under the evidence it cannot be held that the damages allowed are excessive.

Judgment affirmed.