No. 34,363

RICHMOND A. COX, *Appellee*, v. THE KELLOGG'S SALES COMPANY and C. C. HOFFMANS, *Appellants*.

THEODORE COX, a Minor, by His Mother and Next Friend, LOLA COX, *Appellee*, v. THE KELLOGG'S SALES COMPANY and C. C. HOFFMANS, *Appellants*.

(95 P. 2d 531)

Opinion filed November 10, 1939.

*Hugh T. Fisher, Irwin Snattinger,* both of Topeka, and *J. Willard Haynes,* of Kansas City, for the appellants.

*Charles S. Schnider,* of Kansas City, and *Raymond Martin,* of Kansas City, Mo., for the appellees.

The opinion of the court was delivered by

DAWSON, C. J.: Richmond A. Cox and Theodore Cox, father and son, filed these actions for damages against defendants for injuries sustained in a collision of motor vehicles on a public highway.

On the evening of October 29, 1935, after nightfall, plaintiffs were riding as guests of one Ludy in a small Ford truck on the paved highway (U. S. 50-S) a few miles east of Emporia. Ludy drove the truck and Theodore Cox rode in the cab by his side. Richmond Cox rode in the bed of the truck with his back leaning against an iron bar at the rear of the cab. En route westward they crossed a bridge or culvert where the highway curves to the south and then straightens out toward the west again.

About the time the Ludy truck reached this curve, two motor vehicles came from the west—one called the Clements car which was traveling at a speed of 20 to 30 miles per hour, and a second called the Kellogg truck, belonging to defendants, which was traveling at a speed of 50 to 60 miles per hour and rapidly overhauling the Clements car. About the time the Ludy truck and the Clements car were passing each other, the Kellogg truck collided with the Ludy truck, with resultant injuries to the plaintiffs which gave rise to these damage suits.

At the trial the most sharply contested issue of fact was whether the Ludy truck had gotten over on the south half of the road and first struck the Clements car and then ran into the Kellogg truck, or whether the Kellogg truck veered to the north side of the road to pass the Clements car at the time the Ludy truck was passing westward, thus causing a three-car collision and crashing into the left side of the westbound Ludy truck. The conflicting evidence relating to the incident of the Clements car being struck (although without much damage to it), served as a talking point which plaintiffs and defendants strove to use to their own advantage.

Plaintiffs sought to show that the driver of the Kellogg truck was under the influence of intoxicants, but as the trial progressed the court directed the jury to disregard that matter. It was also testified to, but denied, that immediately after the accident Theodore Cox said that Ludy was not fit to drive a car in the nighttime. Another issue of fact which developed a lot of evidence pro and con related to the extent of plaintiffs' respective injuries. All these, as

well as other controverted facts not now important, required a jury trial lasting six days, and culminated in a verdict in favor of Richmond A. Cox for $9,000, and for Theodore Cox in the sum of $2,000. The jury also returned answers to special questions, which read:

"1. Do you find that on the night of the accident the Clements coupé was struck by either the Kellogg truck or the Ludy truck? A. Yes.

"2. If you answer question No. 1 in the affirmative, state which truck struck the Clements coupé. A. Kellogg.

"3. Where, in reference to the center line of the pavement, did the collision occur between the Kellogg truck and the Ludy truck? A. North.

"4. Where, in reference to the center line of the concrete slab, was the left front wheel and portion of the Ludy truck, immediately after the accident? A. North.

"5. In what direction was the Kellogg truck headed immediately after the collision with the Ludy truck? A. North of east.

"6. In what direction was the Ludy truck headed immediately after the collision with the Kellogg truck? A. South of west.

"7. Where, in relation to the center line of the concrete slab, was the Kellogg truck immediately after the collision with the Ludy truck? A. Front left corner and wheel north of center line.

"8. Did Theodore Cox make any statement after the collision as to who was to blame for the collision between the Ludy truck and the Kellogg truck? A. No."

Various post-trial motions were disposed of; a remittitur of $1,000 was entered by Theodore Cox; and judgment was thereupon rendered in favor of plaintiffs.

Defendants appeal, urging various errors, the first of which relates to the admission of testimony (later stricken out) to the effect that there was an odor of intoxicating liquor on the breath of Hoffmans, the Kellogg truck driver, immediately after the accident and later the same evening. Defendants objected to this testimony chiefly on the ground that plaintiffs had not alleged the intoxication of the Kellogg truck driver as one of the grounds of negligence. At the conclusion of plaintiffs' direct testimony the record recites:

"The Court: Before the defendants' testimony is started, I want to instruct the jury that certain testimony has been introduced by one of the witnesses in this case concerning intoxicating liquors . . . it will be stricken out, and the jury will not consider that testimony in arriving at their verdict. I refer specifically to the testimony of the plaintiff Theodore Cox concerning the intoxicating liquors, or the smell of intoxicating liquors immediately after the accident and also at the home of Theodore Cox. As stated, the jury will not consider this testimony in arriving at your verdict, because there is no proof that this particular testimony would lead to the belief that the use of intoxicating liquors in any way caused the accident in question. It will be stricken out and not considered by the jury."

"[Counsel for plaintiffs]: May I ask, Your Honor, what testimony you are referring to?

"The Court: The questions and answers referring to intoxicating liquors or the use of intoxicating liquors at the time of the accident. There has been absolutely no testimony the jury could base any verdict on, convicting these defendants of negligence, because of this testimony.

"[Counsel for plaintiffs]: On behalf of the plaintiffs in this case we except to the statement and ruling of the court, for the reason that the testimony referred to by the court was a part of the *res gestae*."

Defendants interposed no objection to this ruling—which was in their favor—nor did they either then or later give the court any intimation that its ruling was insufficient to cure error, if any, in the first admission of that testimony. But its admission for the time being was not error. Nothing is more common than for the trial court to permit testimony to be given concerning facts of some possible evidential significance, but which when viewed *in toto* appear to be so meager or immaterial as to justify or require their being stricken from the record and the jury told to disregard them.

The next error assigned relates to the overruling of defendants' motion for a new trial. Aside from its relevance to the question of excessive verdict, which we will later notice, this motion appears to have been merely *pro forma*. We discern nothing in this point requiring discussion.

The third error urged relates to the overruling of defendants' motion to set aside the jury's answers to the special questions. To none of these answers, however, is it squarely contended that there was not some competent and substantial testimony to support them. An abstract of the testimony, which extends to 118 pages, and which is again reproduced in defendants' brief to the length of 43 pages, is submitted for our perusal—for no apparent reason we can discover unless it be on the assumption that an independent study of the evidence might induce this court to disagree with the jury's determination of the controverted facts. This, however, is not the function of an appellate tribunal. In *State, ex rel., v. Telephone Co.,* 115 Kan. 236, 269, 223 Pac. 771, the late Mr. Justice Marshall, speaking for the court, said:

"The rule that the verdict of the jury or the findings of fact made by a referee in the district court, when approved by that court, will not be disturbed in the supreme court where the verdict or findings are supported by evidence has been followed during the whole of the history of this state. Probably that rule has been followed five hundred times. It has been followed in equity cases as well as in law cases."

The next two errors assigned raise the question whether the verdicts were excessive. While it is true that the jury returned a verdict for $2,000 in favor of Theodore Cox, and that the trial court required him to choose between a remittitur of $1,000 and a new trial, there are no facts or circumstances shown in the record which would enable this court to hold that the jury's overgenerous verdict was the result of passion or prejudice. On this point the record reads:

"And the court, having listened to the arguments of counsel, and being well and fully advised in the premises, doth find: (1) That the verdict of the jury is excessive, and that said verdict is not excessive as the result of passion and prejudice of the jury. That unless plaintiff remits $1,000 thereof on or before February 4, 1939, said motion of the defendants, Kellogg's Sales Company, a corporation, and C. C. Hoffmans, for a new trial should be sustained."

Our reports are laden with cases holding that the imposition on the prevailing litigant before the jury of a choice between a remittitur and a new trial because the trial court (or this court) considered the verdict to be excessive, does not necessarily establish passion or prejudice on the part of the jury. Sometimes it does; more commonly it does not. (*Leinbach v. Pickwick Greyhound Lines*, 135 Kan. 40, 55-57, 10 P. 2d 33, and citations.) See, also, "Remission of Excessive Damages as Alternative to New Trial" in 7 J. B. A. Kan. 393-398.

On the point whether the judgment in favor of Theodore Cox was still too large, even after the remittitur was filed, the plaintiff's evidence tended to show that he received a cut over his left eye which required several stitches and that it has left a permanent scar. His left incisor tooth was broken so that it had to be drawn and a false tooth inserted and supported by bridge work; two of his upper front teeth were broken off and have had to be tipped with gold; his lip was badly cut; he received a blow on the head which caused numbness for several weeks. A judgment for $1,000 as damages for such a list of injuries does not strike this court as unduly large under our rule frequently applied in considering errors based on the amount of the verdict or judgment in damages. (*Ellis v. Kansas City Public Service Co.*, 131 Kan. 555, 560, 292 Pac. 939; *Sponable v. Thomas*, 139 Kan. 710, 724, 33 P. 2d 721; *Crawford v. Southern Kansas Stage Lines Co.*, 145 Kan. 580, 586, 66 P. 2d 601.)

Turning next to appellants' objections to the verdict and judgment for $9,000 in favor of the elder Cox, the plaintiff's evidence tended

to prove that he was about sixty years old when he was injured in the accident and that until then he had been an active manual worker in railroading and in farming, but that since then he has had a stiff neck; he cannot turn his head toward the right normally as he does to the left, and he needs a cane in walking, and is incapable of doing any hard manual labor. Immediately after his injury a swelling "about the size of a ten-cent loaf of bread" appeared on his back above his right hip. He was sent to a hospital where he remained eleven days, and thereafter he went to Kansas City for more medical aid. He lost weight for a time after the accident, but had regained it at the time of the trial. There was testimony that for some time he suffered pain in his back and in the back of his head; also, dizziness, nervousness and headaches, and had difficulty in sleeping. Some X-ray pictures of his neck, spine and pelvis were taken at various times, and these tended to show that there had been a compressed fracture of the fifth and sixth cervical vertebrae. Some muscular spasm had occurred in the lower region of plaintiff's back, but the X ray revealed nothing in that region which might have caused it. One of plaintiff's witnesses, a specialist in orthopedics, testified that compression of plaintiff's fifth and sixth cervical vertebrae might be induced by trauma, impaction, or by arthritis. Ignoring entirely the evidence for defendants which tended to minimize the extent of plaintiff's injuries—as we must, since the jury appears to have discredited it—did the plaintiff's injuries summarized as above suggest that the verdict and judgment for $9,000 were excessive? A majority of this court hold that such excessiveness is not so clearly shown as to permit this court to interfere. The judgment is therefore affirmed.

DAWSON, C. J. (dissenting in part): I think the $9,000 verdict was clearly excessive and should be substantially reduced—say to $6,000—with the alternative of a new trial on the single issue of damages at the option of plaintiff Richmond Cox. In all other respects I concur in the opinion of the majority.

Mr. JUSTICE THIELE joins in this partial dissent.