No. 34,535

GRACE E. COLLINS, *Appellee,* v. THE SAFEWAY CAB, TRANSFER & STORAGE COMPANY, and THE INDUSTRIAL MUTUAL LIABILITY INSURANCE COMPANY, *Appellants.*

(97 P. 2d 1110)

Opinion filed January 27, 1940.

*J. W. Blood, F. W. Prosser* and *C. Zimmerman,* all of Wichita, for the appellants; *I. H. Stearns,* of Wichita, of counsel.

*William J. Wertz, Vincent F. Hiebsch, Forest V. McCalley* and *Milton Zacharias,* all of Wichita, for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: Plaintiff brought this action against the Safeway Cab, Transfer and Storage Company for injuries sustained in a collision between its taxicab and an automobile in Wichita.

Impleaded with the taxicab company as defendant was the Industrial Mutual Liability Insurance Company, which had issued its insurance policy covering whatever liabilities might be incurred by the taxicab company.

Plaintiff alleged that she was a passenger for hire in defendant's taxicab, and that the collision and her consequent injuries were caused by the negligence of the taxicab driver. She pleaded the pertinent facts, narrated the extent of her injuries, and prayed judgment in damages. Attached to her petition as exhibits were excerpts from various city ordinances which related to drivers' licenses, liability insurance, regulating speed of motor cars, prescribing rules of precedence at street crossings, and requiring suitable brakes and other motor-vehicle equipment.

Defendants answered with a general denial and certain admissions, and denied that the collision was due to any fault of the taxicab company or its driver. They alleged that it was wholly due to the fault and negligence of one Morris W. Hamlin, who operated the automobile which collided with the taxicab.

The evidence for plaintiff tended to show that she was employed as a switchboard operator and cashier at the Broadview hotel in Wichita. Her day's work ended at 11 o'clock p. m., at which time she was accustomed to go home in a taxicab. Accordingly, on the night of December 8, 1938, she called one of the defendant's taxicabs to take her to her home at some distance north and east of the place of her employment. As the taxicab was traveling east on Elm street and approaching its intersection with Main street, a Ford automobile driven by Morris Hamlin came from the north on Main street. The cars collided, the taxicab capsized, and plaintiff was severely injured. Questions of the relative speeds of the two motor vehicles, and which first entered the intersection provoked the usual conflict of testimony which the jury settled by special findings. Their general verdict was for plaintiff in the sum of $6,860.40.

The special findings read:

"1. What if any negligence do you find against the defendant, The Safeway Cab, Transport & Storage Company? A. Speeding through intersection and failing to keep a good lookout for cars.

"2. Which car first reached the intersection of Main and Elm streets?  A. The Ford car.

"3. Where was the taxicab when the driver of the Ford car first saw it?  A. After both cars had entered intersection.

"4. Where was the Ford car when the driver of the taxicab first saw it? A. After both cars had entered intersection.

"5. Give the rate of speed of the Ford car immediately prior to the collision. .A. Between twenty and twenty-five miles per hour.

"6. Give the rate of speed of the taxicab immediately prior to the collision. A. Between thirty and thirty-five miles per hour.

"7. What if any negligence do you find against the driver of the Ford car? A. Speeding through intersection and failing to keep a good lookout for other cars.

"8. What do you find to have been the proximate cause of the collision of the two automobiles?  A. Speeding through intersection and failing to keep a good lookout for other cars and negligence of the cab driver."

Judgment was entered for plaintiff on the verdict and defendants assign certain errors, the first of which is that the jury's verdict was given under passion and prejudice.  It is argued that the evidence did not justify a verdict for so large an amount.  This court has assiduously considered the evidence.  So much of it as the jury chose to believe tended to show that as a result of the accident the seventh cervical vertebra of plaintiff's neck was broken and this caused a disarrangement of the muscles attached to it. . There was a concussion of the brain which rendered her unconscious for several hours, and afterwards caused her an occasional lapse of memory called "retrograde amnesia."  There was professional testimony that such a brain injury sometimes leaves scar tissue which in later life causes epilepsy.  Plaintiff also suffered a retrodisplacement of the uterus accompanied by hemorrhages.  Plaintiff's evidence · also tended to show that she had sustained a cut over the eye, a cut on the chin, her left knee was torn open, and various other bruises, sores and pains likely to attend the experience of being tumbled about in a taxicab which collided with another vehicle while speeding at thirty or thirty-five miles an hour, and only came to a stop by turning over at the curb·line fifty-nine feet away.

Plaintiff's injuries confined her to the hospital for various intervals over a period of eleven weeks, and caused her to undergo two or more serious operations, one to resuture a spinous process which had been broken from the seventh cervical vertebra, and one to correct the displacement of the uterus.

Defendants stress the point that one of the surgical operations which plaintiff had to undergo was not primarily caused by the acci-

dent. The physician who treated her injuries discovered that she had a small tumor, and in one of the surgical operations it was removed. It is not contended that this minor detail was not adequately covered by the court's instructions if any such were necessary or requested, and in any event, it could serve as no more than a talking point before the jury.

Other evidence, including that of medical experts, tended to show that the spinous process broken from the cervical vertebra had failed to unite, that the operation to effect such union had failed, which fact, together with the continuing pain which still afflicted plaintiff at the time of the trial, would warrant an inference that plaintiff was permanently injured in the accident.

Included in the same specification of error is an argument on the sufficiency of the evidence to support the special findings of the jury. We think there was competent evidence to support those findings, and the credence to be accorded thereto was the responsibility of the trial court and jury, not this court's, as our plethora of decisions has so often declared. (*Brown v. Brown*, 146 Kan. 7, 11, 68 P. 2d 1105; *Cox v. Kellogg's Sales Co.*, 150 Kan. 561, 564, 95 P. 2d 531.)

A painstaking study of the record discloses no basis of support for the error assigned on alleged passion and prejudice on the part of the jury. And the same evidence, which the jury chose to believe, summarized as above, touching the gravity and extent of plaintiff's injuries, likewise disposes of defendants' related contention that the verdict was excessive.

The next error urged relates to the instructions to the jury. In one of these the court told the jury that if the evidence warranted a finding of negligence on the part of the taxicab company, the fact that the driver of the other vehicle involved in the collision might also be guilty of negligence would not exonerate the defendant company. Such an instruction was a correct statement of pertinent law. (*Kansas City v. Slangstrom*, 53 Kan. 431, 36 Pac. 706, syl. ¶ 2; *Luengene v. Power Co.*, 86 Kan. 866, 122 Pac. 1032; *Pinson v. Young*, 100 Kan. 452, 455, 164 Pac. 1102; *Swayzee v. City of Augusta*, 113 Kan. 658, 216 Pac. 265; *Acock v. Kansas City Power and Light Co.*, 135 Kan. 389, 398-399, 10 P. 2d 877.)

The next error assigned relates to the court's instruction that if the jury should find for plaintiff and against the taxicab company, they should also find against the defendant insurance carrier. When

the issues were being formed in this lawsuit, defendant did file an amendment to its answer in which it pleaded that the taxicab company and its insurance carrier were improperly joined—on the ground that the action against the former sounded in tort and the latter in contract. A careful perusal of the entire record does not show that any ruling on that point was either invoked or rendered. Certainly that legal question was not squarely contested in the trial court, and, indeed, it is scarcely hinted at in this court. (*Clark v. Linley Motor Co.*, 126 Kan. 419, 268 Pac. 860; *State v. Pyle,* 143 Kan. 772, 782-783, 57 P. 2d 93.) And since the question of misjoinder was merely broached and then abandoned before the trial was well begun, there was no reversible error in the instructions that if the jury found a verdict against the taxicab company they should also find one against the insurance carrier. (*Dunn v. Jones,* 143 Kan. 218, 53 P. 2d 918; Id. 143 Kan. 771, 57 P. 2d 16.) The trial court effectively removed any cause of grievance on the part of the insurance carrier when it reduced the verdict against it to $5,000, which was the extent of its liability as insurer for the taxicab company.

A patient consideration of the entire record fails to disclose anything approaching the gravity of prejudicial error. The judgment is therefore affirmed.