CHARLES HASHMAN, *Appellee*, v. THE WYANDOTTE GAS COMPANY, *Appellant.*

No. 16,634.

SYLLABUS BY THE COURT.

1. EVIDENCE—*Circumstantial—Finding that Gas which Exploded Came from Defendant's Underground Pipes.* Although there was no direct evidence that the natural gas which exploded and injured appellee came from the gas pipes of appellant, the fact that on two different occasions just before the explosion gas came up through the ground, caught fire and burned above appellant's gas pipes close to the place of the explosion, together with the fact that the pipes had been in the ground considerable time, and had rusted and scaled to quite an extent, justified the inference drawn by the jury that the gas which exploded and caused the injury came from the pipes of the appellant.

2. NOTICE—*Defective Underground Gas Pipes—Circumstantial Evidence.* The burning of the escaping gas on the streets in which the pipes were laid and in a densely populated section of the city justified the inference that the appellant knew or should have known of the defective condition of its gas pipes.

3. SPECIAL QUESTIONS—*Construction and Contents.* In asking for the submission to the jury of special interrogatories it is the duty of counsel to frame each question so as to present only a single, direct and material fact, one which is within the issues of the case.

4. SPECIAL FINDINGS—*Consistency with General Verdict.* The answers to special questions examined and found not to be in conflict with the general verdict.

Appeal from Wyandotte court of common pleas. Opinion filed November 5, 1910. Affirmed.

*J. W. Dana,* for the appellant; *George R. Allen,* of counsel.

*James F. Getty, David F. Carson,* and *Charles Thompson,* for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: In an action brought by Charles Hashman against the Wyandotte Gas Company he alleged that he was seriously injured by an explosion of gas that had accumulated in a catch basin from leaky and defective pipes which the gas company had laid and negligently maintained in the streets of Kansas City. The jury returned a verdict awarding damages to Hashman in the sum of $1500, and returned with it answers to a number of special interrogatories. The company appeals, and one of its principal contentions is that the findings and verdict are not supported by the evidence.

It is true, as appellant contends, that there is no direct evidence of the escape of the gas which exploded and injured the appellee, but there is testimony which appears to warrant the inference that it came from the defective pipes maintained by appellant and that appellant is responsible for the injury inflicted. Direct proof of negligence is not essential to a recovery, as negligence may be established by circumstantial evidence alone. If the circumstances proved fairly authorize the inference of negligence, and the jury have drawn that inference, it is enough. The fact that the result is not free from doubt or that different persons might draw different conclusions from the same testimony is not a good reason for disturbing the verdict. As was said in *Railway Co. v. Wood,* 66 Kan. 613 :

"Circumstantial evidence in a civil case, in order to be sufficient to sustain a verdict, need not rise to that degree of certainty which will exclude every reasonable conclusion other than the one arrived at by the jury." (Syllabus.)

Here there was direct proof that quite a number of pipes for carrying gas were laid and maintained in the streets, near the point of the explosion. These pipes were of different sizes, some of them being twelve inches in diameter, some eight inches, some six inches, and some four inches. Some of them had been in the ground about nine years and were considerably rusted and scaled. To prove that gas escaped from them, testimony was offered to the effect that about two or three weeks before the accident gas which came up through the ground was found burning on the street near the corner where the explosion occurred. About four days before the accident gas was found escaping from the pavement, about ten feet from the place of the accident, and it was burning. When appellee and his companion sat down on the edge of the catch basin he struck a match for the purpose of lighting his pipe, when an explosion occurred which threw him about fifteen feet, and the shock was sufficient to break plate-glass windows in the adjacent buildings. A witness who was uncertain about the time, but afterward said it was subsequent to the explosion in question, said that he saw gas escaping from the pipes, and that one of the pipes had a hole in it from which the gas whistled as it passed and he could feel its force against his hand. Another explosion occurred near the same place in July of the same year, but, of course, proof of what occurred subsequent to the explosion which caused the injury can only have a limited application. The appellant finally took out an old service pipe which connected with the main pipe near the place of the accident. It passed under the tracks of the electric railway, and was subject to disintegration from electrolysis. After the removal of this pipe no escaping gas was found in that locality and there were no more explosions. These facts, including incidental ones of less importance, are sufficient to warrant the finding that gas escaped from the defective pipes of appellant through which it was being transported.

It is contended that if defects or leaks existed there was no proof that appellant had notice of them. Natural gas, as all know, is inflammable and explosive in a high degree—a very dangerous agency—and those who transport it are held to the exercise of great care; they are required to lay and maintain pipes that are safe and secure for transporting gas, and carefully to overlook and inspect the pipes in order to keep them in a safe condition, and to detect and repair any leaks or defects in them. Now there is no direct evidence that anyone informed appellant of escaping gas at the place where the explosion occurred, but the fact that gas was oozing through and burning on the streets in a densely populated part of the city several days before the explosion was sufficient to bring the matter to the attention of the gas company, if it had been using an efficient system of inspection. The taking of reasonable precautions for the detection of leaks would have acquainted defendant with the defects in ample time to have repaired them. The jury had a right to infer that the gas company either knew or should have known of the leaks and defects before the explosion. There is testimony that some inspection was made by the company to discover defects, but whether it exercised proper diligence or took the necessary precautions for the safe conduct of the gas through that portion of the city was a fair question of fact for the jury.

There is a contention that the special findings are inconsistent with the general verdict. One answer of the jury is that they did not know whether defendant had notice that the gas pipes in the vicinity of the explosion were old, worn and defective, and it is contended that this is equivalent to a finding that they had no notice. This answer manifestly meant that the company had no direct notice of the condition of the pipes, and this is disclosed by other findings of the jury. The next answer was to the effect that gas burning in the street of itself suggested to the company the likelihood that there were defects in its pipes in that section, and in

still another finding they said the company had notice of a leak prior to the explosion. Reading the findings together, they show that the company knew or in the exercise of ordinary care should have known of the leakage in the pipes in time to have repaired them.

It is contended that another finding is inconsistent with the general verdict. To the question, "Aside from the fact that the defendant owned the gas mains in the street, and that gas accummulated in the catch basin in question, and exploded on March 18, 1907, and was seen a couple of times within two weeks prior to the explosion along the curb line while paper was being burned, what other fact, if any, do you find showing any defects in the defendant's gas mains prior to March 18, 1907?" the answer was, "None." This general answer narrows to some extent the evidence of defects in the pipes, but when these facts are read in the light of the testimony relating to them and the inferences which go with them are considered it can not be said that it conflicts with the general verdict or that there is an insufficient basis for the verdict.

Two special questions asked were properly refused. Each was complex in construction and embraced a number of distinct facts. In submitting questions it is the duty of counsel to frame each question so as to present a single, direct and material fact involved in the issues of the case, and in that way give the jury a fair opportunity to return a positive, direct and intelligible answer. (*Railroad Co. v. Aderhold,* 58 Kan. 293.)

Complaint is made as to the admission of evidence as to the condition of the pipes subsequent to the explosion, but the trial court in its instructions properly limited the purpose and effect of this testimony, and of the instructions there is no complaint.

There is nothing substantial in the contention that the award of the jury was excessive, nor do we find any material error in the proceedings. The judgment is affirmed.