No. 29,387.

FRED CRAMM, *Appellant*, v. THE HUTCHINSON GAS COMPANY, *Appellee*.

(288 Pac. 599.)

Opinion filed June 7, 1930.

*C. M. Williams, D. C. Martindell* and *W. D. P. Carey,* all of Hutchinson, for the appellant.

*A. C. Malloy, Roy C. Davis* and *Warren H. White,* all of Hutchinson, for the appellee; *R. D. Garver,* of Kansas City, Mo., of counsel.

The opinion of the court was delivered by

MARSHALL, J.: The action is one in which the owner of a rented dwelling house seeks to recover damages for the injury to it caused by an explosion of gas furnished by the defendant. Judgment was rendered in favor of the defendant on its demurrer to the evidence of the plaintiff, who appeals.

The negligence alleged by the plaintiff, as set out in the petition, was as follows:

"Plaintiff further states, that on said 12th day of July, 1929, and for some time previous, unknown to this plaintiff, the gas meter which had been installed in said premises by the defendant on the —— day of April, 1929, was out of repair, and improperly constructed to such an extent that it leaked gas, or was so improperly and negligently connected with the pipes in said building that it leaked gas; that said defendant knew or ought to have known that said gas meter was in an improper condition, and knew or ought to have known that said gas meter or its connections were leaking gas, and that said defendant failed and neglected to repair the same, or make proper inspection of said meter and its connections, and said defendant negligently, carelessly and without regard to the rights of others, permitted said gas meter and connections to remain in such faulty and improper condition as to allow gas to escape in the cellar as herein set forth."

There was evidence which tended to prove that plaintiff owned the

dwelling house; that it was rented; that the tenants on several occasions noticed a disagreeable odor in the cellar of the house and called the plaintiff's attention to it; that he also noticed it; that the attention of the defendant was never called to the fact that gas was escaping in the cellar of the house; that the tenant went into the basement to look after it during an approaching flood, lit a match, and the explosion immediately followed which caused the damage to the house for which the action is prosecuted; that a fire occurred which was practically all at the door where the meter was situated; that after the explosion the plaintiff caused the pipes in the house to be tested for leaks and a small one was found which the evidence tended to show was not sufficient to have permitted enough gas to escape to have caused the explosion. The man who repaired the house after the explosion testified:

"The pipe that had been connected from above had been thrown at right angles, evidently by the explosion; the lower connection which came out through the concrete wall showed the meter had been just removed; it was freshly taken out."

The plaintiff testified:

"The break occurred at the top of the meter where the meter screws on to the service pipe."

Still another witness testified:

"The pipe leading from the meter to the service in the house was broken from the meter, and part of the meter was still clinging to this pipe. I did not notice any broken piece of pipe, but the meter was broken; part of the casting was clinging to the pipe."

A demurrer to the evidence was sustained "upon the ground that the plaintiff failed to produce evidence to prove the allegation of negligence as set out in his petition."

The plaintiff relies on circumstantial evidence and the process of elimination to establish negligence on the part of the defendant. The plaintiff argues that from the circumstances surrounding the explosion, from the conditions which existed immediately after it, and from the fact that the pipes in the house, after the explosion, did not have a sufficient leak in them to allow enough gas to escape to cause the explosion, the conclusion must be reached that the explosion was caused by gas escaping from the meter.

In *Hashman v. Gas Co.*, 83 Kan. 328, 331, 111 Pac. 468, this court said:

"It is contended that if defects or leaks existed there was no proof that ap-

pellant had notice of them. Natural gas, as all know, is inflammable and explosive in a high degree—a very dangerous agency—and those who transport it are held to the exercise of great care; they are required to lay and maintain pipes that are safe and secure for transporting gas, and carefully to overlook and inspect the pipes in order to keep them in a safe condition, and to detect and repair any leaks or defects in them. . . . The taking of reasonable precautions for the detection of leaks would have acquainted defendant with the defects in ample time to have repaired them. The jury had a right·to infer that the gas company either knew or should have known of the leaks and defects before the explosion."

In *Helm v. Light & Heat Co.*, 86 W. Va. 628, 634, the court declared that—

"As the meter and its connections were furnished, installed and maintained by the defendant, and the plaintiffs had no right to molest or interfere with it, we are of the opinion that the duties of proper installation, maintenance and inspection of it and the selection of safe and suitable fittings for connection thereof with the service pipes rested upon the defendant. Under the contract, it was the property of the defendant and molestation thereof by the consumer was forbidden."

In 28 C. J. 592 and 593 we find the following language:

"The foregoing rule requires not only a careful laying of sound pipes, but also requires an efficient system of inspection, oversight, and superintendence. A gas company must use due and reasonable care in the inspection of its pipes, to insure reasonable promptness in the discovery of leaks that may occur from defects in or deterioration of pipes and valves, from careless or wrongful meddling with its works on the part of others, or from any other cause within the circumspection of men of ordinary skill in the business. But it is not required that the company shall keep up a constant inspection all along its lines, without reference to the existence or nonexistence of probable cause for the occurrence of leaks or escape of gas. . . . If leaks or defects in the company's pipes occur because of faulty construction or otherwise through the company's fault, it is liable without notice for any resulting injury to person or property."

To the same effect is a note in 25 A. L. R. 267, where the writer cites cases from a number of states to support the rule declared. See, also, 12 R. C. L. 907.

The law declaring the obligation resting on those who furnish electricity for use in cities bears some analogy to the law governing those who furnish gas for use in cities. Both are dangerous agencies. Those who deal in electricity are compelled to use the highest degree of care. (*Hinze v. City of Iola*, 92 Kan. 779, 142 Pac. 947; *Snyder v. Light Co.*, 98 Kan. 157, 157 Pac. 442; *Lewis v. Street Railway Co.*, 101 Kan. 673, 168 Pac. 856; *Stone v. City of Pleasanton*, 115 Kan. 378, 223 Pac. 312.)

If the defendant had inspected its meters and pipes the leakage of gas therefrom, if it was from either of them, would have been discovered and could have been remedied.

There was evidence from which the jury could have concluded that the explosion was caused by gas escaping from the meter and that the defendant was negligent in permitting the meter to get in such a condition that it would permit gas to escape. The evidence should have been submitted to the jury. It was error to sustain the demurrer of the defendant to the evidence of the plaintiff.

The judgment is reversed and the cause is remanded for a new trial.