No. 31,541

THOMAS H. MILLER, by His Next Friend, FRANK MILLER, *Appellee,*
v. THE WICHITA GAS COMPANY, *Appellant.*

(33 P. 2d 130.)

Opinion filed June 9, 1934.

*A. M. Ebright, P. K. Smith,* both of Wichita, and *Robert D. Garver,* of Kansas City, Mo., for the appellant.

*C. A. Matson, I. H. Stearns* and *E. P. Villepigue,* all of Wichita, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action by a minor through his next friend for damages caused by inhaling the fumes of monoxide gas. The general verdict was in favor of defendant. The appeal is by the defendant from orders granting plaintiff a new trial and from orders overruling a demurrer to the evidence of plaintiff and overruling a motion for a directed verdict.

The facts are as follows: Plaintiff lived with his brother and his brother's wife in an apartment in Wichita. The apartment house was built by a man named Shearer in 1930. There were four apartments in the home, all on one floor. Each apartment had a living room, bedroom, dinette and kitchen. Each living room was equipped with a gas floor furnace and a gas appliance in the fireplace. . Each kitchen was equipped with a gas range and each bedroom with a small gas stove. The stove in the bathroom was not connected with a flue or chimney. There was no outside window in the bathroom. There was no excavation under the house except under apartment 4. In this excavation was located a gas meter which measured the gas for all four apartments.

There was only one chimney for all four apartments. It was located between apartments 3 and 4. The floor furnaces in each of the apartments were connected with this flue by pipes. These floor furnaces were fastened to the joists under the floor and had a valve which regulated the amount of gas which might flow into the furnace. At the time of the injury each furnace was set to consume 36 cubic feet of gas per hour. This could be adjusted by turning a valve on the furnace. It was possible to turn on as much as 75 cubic feet per hour. In case this was done there would be incomplete combustion and carbon monoxide fumes would result.

The appliances in use were neither sold nor installed by the defendant.

On July 18, 1930, the owner of the apartment house signed a written application for gas to be delivered at the curb line. He represented that the lines, pipes and appliances had been properly inspected and were suitable for the reception of gas.

During the years that the apartment house has been operated the apartments have been occupied by different families. It has not been necessary for any of these families to apply to the company for gas. It was only necessary for them to turn on the gas in the various appliances and light them.

On January 11, 1932, an employee of the company went out to apartment 1 to answer a complaint that the floor furnace was throwing off fumes. The company's agent advised that it should be repaired. On April 21, 1932, defendant sent a man to adjust a kitchen range in apartment 2. With these two exceptions no agent of defendant was ever in the building until after the injury to plaintiff on December 11, 1932.

Shearer, the owner of the apartment, testified that he notified the company in December, 1931, that he had a complaint from apartment 1 and the company promised to send a man out to see about it. He also testified that a little later he phoned the gas company about a complaint in apartment 2. Some one told him over the telephone again that the company would send a man out to see about it. He also testified that about December 1, 1932, a few days before the plaintiff was injured, Mrs. Miller called him about fumes in apartment 1. He testified that he phoned the gas company a few days later and asked if Mrs. Miller had made a complaint to the company and some employee of the company said she had and they were looking after it.

On the morning of December 12, 1932, the plaintiff was found in the bathroom in apartment 1 in an unconscious condition and with burns on his left arm and face. At the time he was found in this condition the floor furnace was burning and the kitchen range had been burning. The bathroom stove had been turned out. It was very cold weather and all the doors and windows were closed except a kitchen window, which was up an inch or two. The first parties who entered the apartment noticed the odor of monoxide gas.

The negligence relied on by the plaintiff was that the equipment was generally improperly installed and the pipes and other equipment attached to the appliances were defective, inadequate and unsuitable to carry off the fumes and carbon monoxide gas. Plaintiff alleged that agents of defendant inspected all of the gas appliances and gas pipes and flues in the apartment house and knew of their exact condition, and that tenants in the building notified defendant that monoxide fumes were creeping from the heating apparatus into the various apartments. The petition then contained the following allegation:

"Plaintiff alleges that by reason of the said flue pipes becoming disconnected and/or the failure of said flue pipes, because of their size and length, to carry off the gas fumes, vapors and carbon monoxide gas, all of which was known and/or should have been known to said defendant company, said apartment No. 1, was flooded with gas fumes, vapors and carbon monoxide gas on December 11, 1932, and thus caused all of the injuries hereinafter set forth, and all because of the negligence and carelessness of said defendant company in failing to warn said plaintiff or any of the other tenants of said apartment or apartments or said O. P. Shearer of the danger from escaping gas fumes, vapors and carbon monoxide gas."

The petition then alleged that defendant was negligent in turning gas into the apartment house in view of the defective, inadequate and unsafe condition of the appliance pipes and apparatus.

Defendant answered that it did not sell or install the equipment and appliances and that if the fixtures and equipment were defective or improperly installed defendant had no notice of it. It further answered that if plaintiff received the injuries alleged, the injuries were caused by his contributory negligence or that of his older brother, with whom plaintiff lived, and that this contributory negligence consisted of the fact that plaintiff and his brother knew, or should have known, about the defective condition of the appliances and apparatus; that in the bathroom was a gas stove with no flue connection of any kind and plaintiff knew, or should have

known, that this stove would give off poisonous fumes and monoxide gas; and that this negligence was the proximate cause of the injury.

With the issues thus drawn the case was tried before a jury. The jury found generally for the defendant. Plaintiff was granted a new trial.

The first two assignments of error are argued together. They are that the demurrer of defendant to the evidence of plaintiff should have been sustained and that the motion of defendant for a directed verdict should have been sustained. As to the demurrer to the evidence, counsel in the brief for the gas company say that on the record submitted the demurrer might not be good because there was testimony of Shearer to the effect "he made two complaints to the gas company in January and April, 1932, and in each instance the defendant said it would be taken care of." The argument is further made, however, that after the evidence of defendant had been introduced and it was shown that "when Shearer made only two complaints, in January and April, 1932, the company did not in fact agree to inspect and then fail to do so, or assume and agree to inspect and repair, and it was further shown that the complaints did not evidence such a hazardous condition that imminent danger might result if the gas was not shut off, then we believe the defendant's request for a directed verdict should have been sustained." This position of defendant does away with the necessity to consider further the demurrer.

At the outset we will consider the rule of liability in such cases. We must remember that whatever it was that caused this tragedy occurred in pipes and appliances that did not belong to the gas company; neither had the gas company sold them or installed them. Defendant reviews many authorities bearing on this subject. After this exhaustive review of the authorities the general rule is stated as follows:

"(1) A gas company is guilty of negligence, with certain exceptions, if a leak in its own pipes and appliances causes injury to persons or property, whether or not it had actual notice of such leak or leaks, because a gas company is bound to keep its own pipes and appliances in good condition and to have a proper system of inspection to discover leaks.

"(2) A gas company is guilty of negligence if a leak in a customer's pipes and appliances causes injury to persons or property, provided the company has sufficient notice of such leak or leaks, and having such notice (a) negligently inspects or negligently repairs; (b) agrees and assumes to inspect and repair, and then fails to do so; (c) *refuses to inspect and repair, knowing a*

*dangerous condition exists, and with such knowledge fails to shut off its gas until the owner can have his pipes and appliances properly repaired."* (Italics ours.)

We conclude that the rule as stated under subdivision (*c*) above is the rule of liability in this case. Natural gas is a commodity in such general use in modern life that we have all grown careless in handling it. Not many people would be aware of the extremely dangerous consequences that are apt to flow from the improper combustion of natural gas. Nearly everybody knows that the gas itself is dangerous when inhaled, but few people know that its improper combustion produces the deadly carbon monoxide gas. Hence, there is a strict duty on a gas company, which is engaged in the business of furnishing natural gas to consumers, to exercise great care that appliances used by its consumers are proper ones to handle this dangerous substance with as little danger to the consumer as possible. When the attention of the gas company was called to circumstances that indicated that the appliances were not burning the gas sufficiently to prevent the creation of carbon monoxide fumes it was the duty of the company to call the dangerous condition of the appliances to the attention of the customers, in this case to the man who owned the apartment house, advise him of the consequences that might follow the condition discovered, and to advise him that the gas would be shut off until he repaired the appliances. This case is within the rule laid down in *Memphis Consol. Gas & Electric Co. v. Creighton,* 183 Fed. 552. (See, also, *Atkinson v. Wichita Gas Co.,* 136 Kan. 854, 18 P. 2d 127, and cases there cited.)

There was sufficient evidence in this record to warrant the court in submitting the case to the jury on the question of whether the gas company had notice of the dangerous condition of the pipes and appliances and refused to make an inspection that would have disclosed the extreme danger, refused and neglected to repair the pipes and appliances, and knowing of a dangerous condition neglected to shut off the gas until the owner could take such steps as would render the appliances safe. This disposes of the argument that the motion for a directed verdict should have been sustained.

Defendant next argues that the motion for a new trial should have been denied. At the argument of this motion the trial court made the following statement:

"THE COURT: In order to make it specific—he wants to save his record. Taking the trial of the whole case, I am afraid that justice was not done. That is my first ground. The second ground is, I think that really Judge Ebright and Judge Garver carried the jury off their feet. I once had a case reversed on me on that very ground—that I carried the jury off their feet. Third, I am afraid that that ninth instruction was misleading. Upon a retrial, I think I shall reword that ninth instruction. If that is specific enough, let it stand that way."

We hold that statement was sufficient to sustain an order allowing a new trial, on the authority of *Shrout v. Bird*, 132 Kan. 617, 296 Pac. 369; also *Durkin v. Kansas City Public Service Co.*, 138 Kan. 558, 272 P. 2d 226.

The judgment of the trial court is affirmed.

DAWSON and THIELE, JJ., concur in the result.