No. 34,434

JULIAN STERNBOCK, *Appellee*, v. CONSOLIDATED GAS UTILITIES CORPORATION, *Appellant*.

(98 P. 2d 162)

Opinion filed January 27, 1940.

*Robert C. Foulston, George Siefkin, Sidney L. Foulston, Lester L. Morris, George B. Powers, Carl T. Smith, C. H. Morris, John F. Eberhardt,* all of Wichita, *F. A. Rittenhouse* and *Walter D. Hanson,* both of Oklahoma City, Okla., for the appellant.

*W. E. Holmes, Howard L. Baker, Edward F. Arn, Allen B. Burch* and *Henry Martz,* all of Wichita, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action to recover damages to personalty in plaintiff's shoe store and incidental damages resulting from the ignition of natural gas which it was alleged was occasioned by defective gas lines owned by two commercial gas companies in the city of Wichita. The defendants, the Gas Service Company, and the Consolidated Gas Utilities Corporation, each serviced certain occupants of the building in which plaintiff's store was located. Separate demurrers to plaintiff's evidence were interposed by defendants, but only the demurrer of the Gas Service Company was sustained. The other defendant has appealed.

The first complaint of the Consolidated Gas Utilities Corporation, to which we shall hereafter refer as the defendant, concerns the ruling on its demurrer. It is, of course, elementary that in ruling

on a demurrer to evidence courts consider only evidence favorable to the party adducing it, give full credence thereto, and construe all evidence and reasonable inferences to be drawn therefrom in the light most favorable to the party adducing it. (*Meneley v. Montgomery*, 145 Kan. 109, 64 P. 2d 550; *State v. Linville*, 150 Kan. 617, 618, 95 P. 2d 332; *Trezise v. State Highway Comm.*, 150 Kan. 845, 96 P. 2d 687.) Applying these principles, we shall review plaintiff's evidence, which was, in substance, as follows:

Plaintiff operated a shoe store in the city of Wichita, on the ground floor of a building which faced the south. The building was approximately 125 feet long and 25 feet wide. The rear twelve or twelve and one-half feet of the building was used for a storeroom, which was separated from the front portion by a wall which did not extend to the ceiling. There was no basement under the building, and the gas furnace which heated plaintiff's portion of the building was located in about the center of the storeroom. The storeroom had a wooden floor and there were some cracks in the floor. There was an air space of approximately a few feet between the ground and the floor. In the northeast corner of the storeroom there was located a small washroom. The gas meters of both defendants were attached to the wall of the washroom. The defendant, on the date of the fire and for a period prior thereto, had not sold gas to the plaintiff, but was servicing other occupants on the second floor. The Gas Service Company was servicing plaintiff's furnace at the time of the fire. The main service lines of both gas companies were buried in the ground underneath the pavement in the alley which ran east and west immediately north of the building. The alley was approximately twenty feet in width. Immediately adjacent to the north of the building was a cement walk approximately two feet in width. The service lines of both gas companies were iron pipes of about an inch or an inch and a quarter in diameter. Both lines entered the building from the north. The Gas Service Company's line entered the building above plaintiff's ground floor. Defendant's line entered the building below that floor. The service line of the Gas Service Company was buried in the alley to a depth of approximately fifteen inches. The service line of the defendant was three or four inches lower. The lines were approximately twelve to fourteen inches apart.

The fire occurred on Saturday, January 16, 1937, between three and four-thirty o'clock in the afternoon. There was no explosion.

The gas simply ignited and the fire and damage ensued. Plaintiff's store had become cold at the time above indicated and he went to the storeroom to light the furnace. He discovered the furnace had gone out. He turned off the gas and waited for some period of time for the gas in the furnace, if any, to get out of the furnace before he tried to light it. He then struck a match to light the furnace and shortly thereafter noticed some small flames coming up through the openings in the floor northeast of the furnace and from five to ten feet from where he was standing. He ran into the washroom for water to put out the fire, and while in the washroom noticed a fire coming through the floor right at the pipes which ran to the meters. He poured the water on the last-mentioned flames and got another bucket of water to extinguish the flames outside of the washroom. When he came out of the washroom he observed another flame which was coming from underneath the floor molding on the west side of the building. He next observed the flames coming through the floor at approximately the center of the storeroom, which was near the furnace. The fire department was called and arrived within about ten minutes. By that time the flames were coming through the entire floor. As previously stated, the service line of the defendant came into the building under the wooden floor. The hole in the wall through which its pipe extended had not been cemented, with the result that an opening remained in the wall around the pipe. Tests for gas were made in the northeast corner of the room about two hours after the fire with a J. W. combustible gas indicator. The tests disclosed a small percent of gas above the floor and a combustible mixture of air and gas below the floor where defendant's service pipe entered. The same afternoon the alley pavement was torn up in part by the Gas Service Company, and a test of its service line disclosed no leaks therein. The following Monday that company also made tests of the connection of its service line with its main line in the alley, of its meter, and of its house line from the meter to the furnace. No leaks were discovered in its equipment. On Monday gas could be heard escaping from defendant's pipes, after the pavement had been lifted but before the pipes were uncovered. At that time the indicator disclosed an explosive mixture near a point at which a leak was discovered in defendant's line on the following Wednesday. No gas lines entered the building except the lines owned by the two companies mentioned. The only tests made by defendant of its lines for escaping gas, so

far as the evidence disclosed, were made on Wednesday following the fire on Saturday. When it uncovered its service line gas could be heard escaping therefrom. The pressure of the gas was sufficient to blow up dust around the leaks. The dirt around defendant's service pipe was grayish-white in color, dry and pulverized. One hole in defendant's service pipe was observed at a point about 18 to 24 inches north of the building. The size of the holes in defendant's pipe were variously described as being the size of a pencil and as being about three-sixteenths of an inch in diameter. Some of the witnesses testified they observed one hole in the pipe, while others testified there were two holes. Defendant's service pipe was also found to be old, badly rusted, corroded and pitted. The dry condition of the dirt around its pipe extended as far as the dirt was excavated toward the building. The evidence disclosed dry dirt was less resistent to the flow of gas than wet dirt, and that gas followed the line of least resistance. There was evidence the character of the escaping gas was such that it might have been ignited from the spark from the match lighted by plaintiff. A plumber testified that twenty years would be the limit of the life of such pipe in that type of soil and that he would not expect it to corrode and get holes in it in less than five, six or seven years.

In support of defendant's contention its demurrer should have been sustained it urges the evidence was insufficient in the following particulars: There was no evidence the agency which caused the fire was *natural* gas; this was a circumstantial-evidence case and plaintiff's evidence did not exclude other possible agencies which might have caused the fire; the evidence failed to disclose defendant had notice or knowledge of leaks in its line; there was no proof defendant had failed to inspect its lines.

We shall treat the contentions in the order stated. It is true the petition charged it was escape of *natural* gas from defendant's line that caused the fire. The lawsuit was clearly tried upon the theory it was the gas, irrespective of its name, which leaked from defendant's line that caused the fire. In plaintiff's proof he eliminated the source of gas from leaks in the line of the only other gas company which serviced the building. It is also true plaintiff's witnesses, except in rebuttal testimony, did not expressly label the gas escaping from defendant's line as *natural* gas. They, of course, simply called it gas. Manifestly a leak in defendant's gas lines would scarcely permit the leakage of any other kind of gas than the

gas defendant was delivering through its pipes, which was *natural* gas. Witnesses detected the odor of that gas, heard it escaping from defendant's line, and gas at a point where defendant's line entered the building under the floor, according to valid tests, was combustible. Flames were seen in close proximity to that very point in the building. Moreover, this was defendant's own line in which leaks existed, and it was not incumbent upon plaintiff to prove those leaks were actually in that portion of defendant's line which was within the building. It was sufficient to show the leaks were at a point in close proximity to the wall of the building. (*Koch v. Southern Cities Distributing Co. et al.*, 18 La. App. 664, 138 So. 178.) Proof was therefore not lacking that the presence of *natural* gas was the agency which probably occasioned the fire. Moreover, we also note that defendant, in a requested instruction, repeatedly employed the term *"natural* gas." The first contention touching the ruling on the demurrer is not persuasive.

What about the second contention? It is true plaintiff attempted to establish the cause of the fire by circumstantial evidence. If such evidence fairly authorized the inference of negligence it was sufficient. (*Hashman v. Gas Co.*, 83 Kan. 328, 111 Pac. 468; *Cracraft v. Wichita Gas Co.*, 127 Kan. 741, 742, 275 Pac. 164.) This, however, was not a criminal action, but a civil action, and in order to sustain a verdict in a civil case circumstantial evidence need not rise to that degree of certainty which will exclude every reasonable conclusion other than that arrived at by the jury. (*Railroad Co. v. Perry*, 65 Kan. 792, 70 Pac. 876; *Railway Co. v. Wood*, 66 Kan. 613, 72 Pac. 215; *Hashman v. Gas Co.*, 83 Kan. 328, 329, 111 Pac. 468; *Cracraft v. Wichita Gas Co.*, 127 Kan. 741, 742, 275 Pac. 164; *Asche v. Mathews*, 136 Kan. 740, 18 P. 2d 177; *Noller v. Aetna Life Ins. Co.*, 142 Kan. 35, 38, 46 P. 2d 22.) In *Railroad Co. v. Perry* it was held:

"The fact that soon after the passing of an engine a fire starts near a railway track in an enclosed field covered at the time with a growth of highly inflammable vegetation, and travels before a high wind in a direction away from the track, is sufficient to warrant a jury in finding that the fire was caused by the operation of the railroad, without its appearing that the engine emitted sparks or live cinders or was put to special exertion, and without further proof excluding other possible origins." (Syl. ¶ 1.)

In the instant case the only other conclusion the jury might have reached as to the cause of the fire, insofar as the record discloses, was gas from the lines of the Gas Service Company, and that source was completely eliminated by plaintiff's evidence. Plaintiff's evi-

dence, and reasonable inferences to be drawn therefrom, definitely disclosed a strong probability the fire was occasioned by leaks from defendant's line. Having definitely succeeded in his proof to that extent, plaintiff was under no duty to eliminate every other imaginary agency which possibly might have caused or contributed to the fire and resulting damage. Defendant later had the privilege of showing, if he desired and was able to do so, that some other agency was the efficient or procuring cause of the fire, but such attempt was not made.

Touching the demurrer defendant next, in substance, contends liability of a distributor of natural gas can attach only by reason of negligence on its part after it has notice or knowledge of the existence of defects in its lines. In support of that contention it cites *Hashman v. Gas Company*, 83 Kan. 328, 111 Pac. 468; *Luengene v. Power Co.*, 86 Kan. 866, 122 Pac. 1032; *Basnett v. Power Co.*, 99 Kan. 716, 163 Pac. 161; *Swayzee v. City of Augusta*, 108 Kan. 785, 197 Pac. 208, 113 Kan. 658, 216 Pac. 265; *Webb v. City of Chanute*, 118 Kan. 505, 235 Pac. 838; *Schoen v. Arkansas Valley Gas Co.*, 125 Kan. 206, 263 Pac. 1079; *Cracraft v. Wichita Gas Co.*, 126 Kan. 775, 271 Pac. 273; rehearing, 127 Kan. 741, 275 Pac. 164; *Atkinson v. Wichita Gas Co.*, 136 Kan. 854, 18 P. 2d 127; *House v. Wichita Gas Co.*, 137 Kan. 332, 20 P. 2d 479; *Carlisle v. Union Public Ser. Co.*, 137 Kan. 636, 21 P. 2d 395; *Miller v. Wichita Gas Co.*, 139 Kan. 729, 33 P. 2d 130; *Baker v. Kansas Power & Light Co.*, 146 Kan. 258, 69 P. 2d 731. Those decisions do not support the broad contention urged by defendant, nor do we now subscribe to such a doctrine. It is true that in cases where notice, actual or constructive, was involved, the language employed in opinions similar to that in the Cracraft case, *supra*, referred to the negligence as commencing only after notice of a defective condition. That was the particular negligence charged and specifically found by the jury in those particular cases. The Cracraft case or other cases cited, however, are not authority for the broad doctrine that distributors of a commodity as dangerous as natural gas have no duty whatsoever to protect consumers or the public generally until after they have notice or knowledge of the dangerous condition. If notice of leaks, actual or constructive, was the sole test of liability, then distributors of a highly dangerous commodity, such as natural gas, would be completely exonerated from all negligence in discovering a highly dangerous condition which they themselves had created by installing defective

equipment, and of which fact, in the exercise of proper diligence and care, they should have been aware. Were notice the only test of liability, distributors of such commodities would likewise be under' no duty or obligation whatsoever to exercise proper diligence in the inspection of, or in the maintenance of, their own facilities of transportation after the original installation thereof. Manifestly that cannot be, and it is not, the rule in this nor in many other jurisdictions. In *Hashman v. Gas Co.*, 83 Kan. 328, 111 Pac. 468, this court said:

"It is contended that if defects or leaks existed there was no proof that appellant had notice of them. Natural gas, as all know, is inflammable and explosive in a high degree—a very dangerous agency—and those who transport it are held to the exercise of great care; *they are required to lay and maintain pipes that are safe and secure for transporting gas, and carefully to overlook and inspect the pipes in order to keep them in a safe condition, and to detect and repair any leaks or defects in them."* (p. 331.)˙ Italics ours.)

In *Cramm v. Hutchinson Gas Co.*, 130 Kan. 853, 288 Pac. 599, it was held:

"A gas company furnishing gas in residences for domestic use is guilty of negligence when it fails to inspect its meters and pipes and see that there is no leakage of gas therefrom." (Syl.)

See, also, *Miller v. Wichita Gas Co.*, 139 Kan. 729, 732, 33 P. 2d 130; *Brown v. Kansas Natural Gas Co.*, 299 Fed. 463; *Koch v. Southern Cities Distributing Co. et al.*, 18 La. App. 664; *Natural Gas Co. v. Church*, 126 Ohio St. 140; *Vaillancourt v. Company*, 88 N. H. 95;. *Springfield Gas Co. v. Herman*, 46 Ohio App. 309; *Groff v. Gas Co.*, 110 W. Va. 54.

In 3 Willis, Thornton Oil and Gas, § 1093, it is said:

"A gas company is chargeable with notice of the fact that gas pipes and mains are liable to rust and decay, and by reason of such rusting or decaying permit gas to escape. . . . Being thus chargeable, a duty devolves upon gas companies to inspect their pipes and mains and the connections therewith. It must use reasonable care in making these inspections; and if a leak could have been discovered and prevented by such an inspection, that fact of itself will be sufficient to charge the company with negligence if it fail to make the inspection. And this is true of a company that purchases the plant of another company, with respect to such plant, for its liability is not dependent on its knowledge of the pipes' defective condition, or escaping˙ gas; but upon its care in keeping the pipes in a reasonably safe condition, and using them so as not unnecessarily to injure persons and their property." (pp. 1491, 1492.)

In *Brown v. Kansas Natural Gas Co.*, supra, it was said:

"Defendant argues in effect that as its pipe had been in the ground for seventeen years without leaking, it had the right to assume that it would so continue until actual notice of deterioration or leak was brought to its attention. We cannot subscribe to any such doctrine. On the contrary, the evidence made it, after the lapse of such a time, an issue of fact whether defendant was negligent if it failed to discover that its pipe was corroded and rusted, and liable to such leaks as were actually disclosed by the tests made after the accident. (*Dow v. Winnipesaukee G. Co.*, 69 N. H. 312, 41 Atl. 288, 42 L. R. A. 569; 76 Am. St. Rep. 173; 28 C. J. 593.)" (p. 466.)

In the instant case plaintiff attempted to prove defendant had previously received actual notice of leaks in its line. The proffered evidence was excluded. The correctness of that ruling has not been brought here for review. No direct notice to defendant is therefore involved. Plaintiff contends an admission by counsel for defendant in the course of the trial discloses defendant's service line had been laid 25 or 30 years ago. Counsel for defendant deny the admission went that far. The record is not sufficiently clear as to the extent of the admission and we shall not speculate concerning it. Plaintiff also directs our attention to the testimony of one of his witnesses who testified that the lines of a gas company, which may have been defendant's predecessor, were laid 25 to 30 years ago. A careful review of the testimony does not permit us to say with assurance such testimony was intended to refer to service pipes. It may have been intended to refer only to main lines. A plumber did, however, testify that the kind of service pipe used by defendant in the instant case would not be filled with holes in that type of ground in less than five, six or seven years, and that the maximum life of the pipe in that kind of ground was twenty years. The condition of this particular service pipe was fully described and no speculation concerning its condition is necessary. It was clearly very bad and in nowise fit to be used for transporting an agency as dangerous as natural gas. Construing the plumber's testimony in the light most favorable to plaintiff, as of course it must be on demurrer, the triers of fact had the right to believe this service pipe, if new when laid, had been laid longer than five, six or seven years or that it was old pipe when first laid. On the other hand, the inference is warranted that if the service pipe was of the kind and character which would last the maximum period, then and in that event it had lain in the ground twenty years or more. Under the circumstances we think the trial court properly held the question of proper diligence on defendant's part in inspecting and maintaining its pipe was a question for the jury.

Defendant, however, insists no liability can attach unless it reasonably can be anticipated that damages may result. That particular contention undoubtedly is sound, but it does not follow that defendant is under no duty to make diligent and adequate inspection in order to ascertain whether leaks in its lines reasonably may be anticipated. In *Koch v. Southern Cities Distributing Co. et al.*, 18 La. App. 664, it was held:

"Natural gas distributor is liable for injury resulting from failure to exercise degree of care commensurate to danger involved." (Syl. ¶ 8.)

Defendant finally urges there was no evidence defendant had not inspected its lines and pipes. It is true there was no direct evidence to that effect. Neither was there evidence its lines or service pipes had been inspected. In view of the very bad condition of the pipe, the inference was warranted that if defendant, in fact, ever tested this pipe, it must have done so entirely too long ago to have been of any practical benefit on January 16, 1937, the date of the fire, or that if it inspected the pipe recently the inspection must have been superficial and entirely inadequate. The evidence was sufficient to take the case to the jury on the questions of diligent and adequate inspection and proper maintenance of defendant's lines.

Defendant next contends some of the instructions were erroneous and that the instructions as a whole cannot be reconciled. It asserts some of the instructions made defendant's duty to prevent leaks absolute, and made defendant an insurer of the safety of its mains and service pipes, regardless of circumstances. Defendant concedes other instructions properly advised the jury that defendant was not an insurer, and that before plaintiff could recover it would be necessary to find defendant guilty of negligence in some particular as charged in the petition. Plaintiff asserts the specific objections now made were not made to the trial court. From the record it does not affirmatively appear the particular complaints now made were called to the trial court's attention when the instructions were given or on motion for a new trial, but we prefer, in the instant case, to pass that point also. Defendant's complaint of the instructions, assuming it was made, might be somewhat troublesome, except for the fact that the jury by its special findings made the error, if such it was, nonprejudicial. The jury did not find defendant liable as an insurer of the safety of its lines, but expressly found the fire was caused by gas from defendant's line or pipe, and further expressly found that defendant was guilty of one of the grounds of negligence substantially as charged in the petition. That finding was:

"We the jury find that the defendant was negligent in that they did not and have not *properly and diligently* inspected their lines running into plaintiff's store." (Italics ours.)

Where error complained of does not prejudice the substantial rights of a party it must be disregarded (G. S. 1935, 60-3317), and the rule is, of course, applicable where errors or defects in instructions become nonprejudicial by reason of special findings. (*Head v. Dyson*, 31 Kan. 74, 76, 1 Pac. 258; *Forbes v. Railway Co.*, 101 Kan. 477, 168 Pac. 314.)

The last complaint pertains to the subject of damages. The complaint involves the various amounts allowed as damages to plaintiff's stock of merchandise, which consisted mainly of shoes, and involves also amounts allowed for various and sundry articles of personal property used in the conduct of the shoe-store business. It involves, also, prospective profits over a period of about seven days during which the store was closed or partially closed. Two suits of clothes which happened to be in the store were also burned. The principal objection to numerous items, other than the stock of merchandise, was that plaintiff's evidence to establish value was not competent, and that some of it constituted hearsay. A careful review of the evidence has led us to conclude there was nothing sufficiently serious in the admission of testimony to warrant a new trial. Plaintiff had been engaged in the shoe business for a great many years. He was conversant with the value of the various articles which formed a part of and were necessary to his business. It was his own property and his testimony concerning its value was competent. To be sure, the persuasiveness of the testimony touching its value was for the jury, but that fact did not destroy its competency. (*Brenneisen v. Phillips*, 142 Kan. 98, 45 P. 2d 867.)

It is true there was certain conflict between plaintiff's own evidence and the testimony of some of his witnesses concerning the damage to his stock of merchandise. It was the province of the jury to resolve the conflict. There was evidence to support the amount allowed as damages to his stock, and that finding cannot be disturbed.

A small remittitur was offered by plaintiff on two items. The court accepted the remittitur, and judgment was rendered accordingly. The technical error as to those two items was, therefore, cured.

The judgment should be affirmed. It is so ordered.