No. 37,573

ETHEL BOOKER, *Appellee*, v. THE KANSAS POWER AND LIGHT COMPANY, *Appellant*.

(205 P. 2d 984)

Opinion filed May 7, 1949.

*Robert E. Russell*, of Topeka, argued the cause, and *Clayton E. Kline*, *M. F. Cosgrove, Balfour S. Jeffrey*, all of Topeka, *Fred L. Conner* and *T. B. Kelley*, both of Great Bend, were with him on the briefs for the appellant.

*Tudor W. Hampton*, of Great Bend, argued the cause, and *S. R. Blackburn, Don C. Foss, Barton Carothers* and *Ed. R. Moses*, all of Great Bend, were with him on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This action was instituted by the owner of a leased grocery store building located in Great Bend to recover damages for the destruction of the building and loss of its rental value.

The action was against The Kansas Power and Light Company, a corporation, for damages caused by the alleged explosion of natural gas which defendant supplied for the heating of the building. There was only one gas heater, a circulating heater of medium size, in the building and it was located in about the center of the store and against the north wall. The tenant was Eldon LeMay. Judgment was for plaintiff and the defendant appeals. It specifies as errors the overruling of its demurrer to plaintiff's evidence, a motion for a directed verdict and its motion for a new trial.

We shall first consider the evidence adduced by appellee. The building faced the north with an alley located immediately to the east. The gas meter was located in the alley and near the northeast corner of the building. From the meter the gas pipe extended into the ground, then laterally to the west and turned up on the inside of the building forming an el-shaped pipe. On January 9, 1947, the day after the explosion, R. T. McGee, the division manager of the gas company made an inspection. Appellee called him as her witness. He testified, in substance: The customer's gas pipe was broken in the el of the pipe about eight or ten inches underground where the pipe riser screwed into the el; the break was partly bright and partly discolored or rusty; part of it, possibly one-half of it, could have been an old break; gas could have escaped from that break, he could not tell how old the break was; the break was ten, twelve or fifteen inches from the northeast corner of the building; he removed the broken pipe; it was his opinion the explosion occurred from natural gas; he knew of the calls that had come into appellant's office, before the explosion, concerning gas fumes in appellee's building.

Walter Sears, the city fire chief, testified, in substance: After the explosion he examined the portion of the el both above and below the meter on January 9, 1947; the break in the pipe below the meter, which was the customer's portion of the pipe, was an old break; one-half or three-fourths of the pipe showed it had been broken for some time; he was not a chemist and could not tell

exactly how long it had been broken; he arrived at the store about two minutes after the fire alarm was sounded; there was a small . fire at the northeast corner of the building.

The tenant, LeMay, testified the wooden floor was buckled upwards; the boards were broken out of the entire end of the building.

In support of appellant's demurrer to plaintiff's evidence it contends it is not liable for damages resulting from a break in pipe exclusively in the customer's control when the evidence shows the gas company had no knowledge, or was not put upon notice, of any leaks in such line or had assumed no responsibility to inspect or repair such line. Appellant also contends liability cannot attach upon a presumption that a gas leak existed in the customer's service line without establishing facts or circumstances that a leak existed and that appellant had knowledge thereof.

In order to consider and apply the law applicable to the instant case it is necessary to consider other phases of plaintiff's evidence pertinent thereto.

The explosion occurred January 8, 1947. Prior thereto appellant had received three notices concerning suspicious circumstances relative to fumes or gas in the building and requests to make an inspection. The complaints were made on November 9, December 14 and December 18, 1946. The first was a telephone call by Danelda LeMay, the wife of the lessee. She notified one of appellant's office girls they "could smell something in the store and didn't know what it was but *was afraid it might be gas* and asked ʻif they would send a man out *to check to see what it could be.*" (Our italics.) She said she would right away. Mr. McAfee came to the store; she did not talk to him; he went to the stove and was there only a few minutes; she did not know what he did.

The second call, December 14, was made by Ruth Miller, the cashier in the grocery store. Her testimony, in substance was: She called appellant's office and advised them there seemed to be an odor in the building; she would like to have someone come out and check it and see if there was something wrong, *if it could be gas, or what it was;* Orville McAfee came out again but was there only a few minutes; he went to the stove but she did not know what he did.

The third call, which was the second by Danelda LeMay, was made on December 18. Her testimony concerning that notice, in substance, was: She called and notified appellant that one of their

men had been in the store a few days before but that all he did was to check the stove; *she knew there was something more than that wrong;* she advised them the man who had been there was Mr. McAfee; she advised that their eyes were burning, that it was especially bad and she wanted to know if they could send someone else; *she was scared; they were not at all satisfied with what had been done* and she was told Mr. Jones would be sent out.

Elden LeMay, the lessee, in substance, further testified: Jess Jones did come to the store on December 18; he was there a very short time; he simply said that if they would take down the stovepipe and "take out the bird's nest out of it, we wouldn't have any more trouble"; he and a boy working at the store took the pipe down; there was nothing in it and they replaced it as it was before; Orville McAfee had been out there for the company twice before.

On cross-examination the same witness, in substance, stated: December 18 was the last time he or anyone from the store called the gas company; Mr. Jones told him on December 18, if they would do as he directed about the stovepipe they would have no further trouble.

In connection with the *stovepipe* the witness on cross-examination was asked by defense counsel and answered as follows:

"Q. You did correct it didn't you? A. Yes, sir."

Mr. R. T. McGee, division manager of the gas company, as previously indicated, was called as a witness on behalf of the plaintiff and testified further, in substance: It was the policy of his company that when it received a call from a customer regarding a possible gas leak to make a service investigation and to have a man go out and make a survey of the premises for the leak; they had an electrically operated device used for that purpose; when a customer reports that there is a leak or that he smells an odor of any kind around the house they go out and make a test with this machine; if the odor of gas is strong enough it can be detected by smelling; when the machine is used the valves are all cut off inside the house and the gas pressure is put onto the pipes; if the meter registers under those conditions it shows there is a leak in the premises or in the service line between the meter and the house; when a leak is detected the gas is shut off until the leak is repaired; where the pipe joints are visible in the basement they sometimes use a brush with soapsuds and paint at the connections; if there is

a gas leak bubbles will indicate it; he inspected the broken pipe the day after the explosion and removed it.

McGee, when used as a defense witness, stated with respect to the use of the gas detector the company was short of some help at that particular time and did not use the gas detector on this job prior to the explosion.

Jess Jones, also a defense witness, testified, in substance: He went to the grocery store on the 18th of December in response to a request from McAfee; the latter was their boy who took care of trouble calls; it was a little after 5:00 o'clock, the boys were off work and he went alone; Mr. McAfee told him he had been out. there and he wanted him to go; McAfee said he could not understand what the trouble was and thought maybe he (Jones) could understand it; he smelled some fumes; he told the boy in the store to check the stove vent and to see there was no stoppage, or a bird's nest, or something of that character, in the vent; that was about all he did; he took no tools along and made no tests in or about the building; he found nothing wrong with the stove; the burner looked like it was all right; he thought the burner was in adjustment but he did not touch it; the fumes smelled like burnt gas; fumes make your eyes smart; you just smell gas; natural gas does not make your eyes smart; he smelled no gas; he could not describe the combined odor of natural gas and fumes; he had no calls from then on and he never went back to this place after December 18 until the explosion; he made tests with the leak detector on this building the day after the explosion and found no leaks.

A few other details relative to both appellee's and appellant's evidence might be narrated but they could not alter the decision under the issues involved on appeal. The jury found all issuable facts in favor of appellee and returned a general verdict in her favor. The special findings were:

"1. Do you find that fumes were present in plaintiff's premises prior to December 18, 1946? A. Yes.

"*a.* If you answer the above question in the affirmative state the source of the fumes: A. From old *brake* in pipe and L exhibit 5 and 6.

"*b.* If you answer the above question in the affirmative, was the condition corrected? A. No.

"*c.* If you find said condition was corrected, were any fumes detected by anyone after such correction and prior to the date of the explosion? A. ———

"*d.* If you find that the condition was not corrected, then state what plaintiff did, if anything, to cause said condition to be corrected? A. The plaintiff's lessee's wife and *employe* called the Kansas Power and Light Co. on three occasions.

"2. Did plaintiff or anyone make any complaint or give any notice to the defendant company of any fumes or leaking gas after December 18, 1946, and prior to the explosion? A. No.

"*a*. If you answer this question in the affirmative, state when and to whom such notice was given? A. ——

"3. If you find that natural gas was leaking into plaintiff's premises, then state:

"*a*. The exact location of the leak: A. Northeast corner of building.

"*b*. How long the leak existed prior to the explosion: A. Unknown.

"*c*. The notice, if any, given by plaintiff or anyone to defendant of the existence of said leak and of what said notice consisted: A. Three telephone calls that fumes existed in the building.

"4. After December 18, 1946, and up to the time of the explosion, did the plaintiff make, or cause to be made, any inspection of the gas pipes on the premises? A. No.

"5. If you find for the plaintiff, how much do you allow for: *a*. Damage to Building: $2,000.00. *b*. Loss of rent: $150.00."

Appellant argues the court erred in overruling its motion for judgment *non obstante veredicto*. The contention cannot be sustained. For the purpose of testing a ruling on such a motion it is admitted all findings are supported by the evidence. (*Haney v. Canfield*, 152 Kan. 597, 600, 106, P. 2d 662; *Jelf v. Cottonwood Fall Gas Co.*, 162 Kan. 713, 178 P. 2d 992.) Under the law of the case to be stated presently the special findings are not inconsistent with the general verdict and they do not compel a verdict for appellant.

Appellant stresses especially finding No. 2 as disclosing appellee's contributory negligence. If three notices of fumes and the asserted suspicion of gas leaks did not result in obtaining a proper inspection, were further notices required as a matter of law? We do not think so. Moreover, the lessee was advised by appellant if the stovepipe was cleaned out there would be no further trouble. Appellant is not in a good position to complain if the lessee, the occupant of the premises, believed the statement. At least that would be true in the absence of evidence of the lessee's subsequent negligence.

Furthermore, according to the evidence of appellant's own employee an odor of natural gas may not be detected unless it is strong. There apparently was a substantial escape of gas under the floor at the extreme northeast corner of the building at some time prior to or on January 8, 1947, without it having been detected by anyone in the building. The gas might have escaped in considerable quantity during the morning hours of January 8

when no one was in the building to detect it. The explosion occurred between 8:30 and 9:00 a. m. Under these circumstances the question of contributory negligence of the tenant was a question of fact for the jury. And surely that would be true concerning any question of contributory negligence of appellee, the owner of the building, who had not been in the building insofar as the evidence discloses. In the light of the evidence previously narrated we think it unnecessary to dwell further on objections to other special findings.

Was appellee's evidence sufficient to require the submission of the case to the jury? Assuming for the moment that notice of gas fumes alone from a stove would not always require full inspection of the distributor's or the customer's pipe, in this case appellee's evidence did not disclose merely notices of gas *fumes* from the stove. The first notice disclosed the customer suspected the *escape of gas*. The second notice likewise requested an inspection to see, *"if it could be gas,* or what it was." (Our italics.) The third notice complained that on the first two calls appellant's representative, McAfee, checked only the stove. The complainant stated she notified appellant she, "knew there was something more than that wrong"; that she wanted to know if someone else than McAfee could be sent out and expressly stated she "was scared."

These notices were ample to require an inspection of appellant's and the customer's gas lines for the purpose of determining whether any of them contained gas leaks. In *Miller v. Wichita Gas Co.,* 139 Kan. 729, 33 P. 2d 130, it was said:

" 'A gas company is guilty of negligence if a leak in a customer's pipes and appliances causes injury to persons or property, provided the company has sufficient notice of such leak or leaks, and having such notice (a) negligently inspects or negligently repairs; (b) agrees and assumes to inspect and repair, and then fails to do so; (c) *refuses to inspect and repair, knowing a dangerous condition exists, and with such knowledge fails to shut off its gas until the owner can have his pipes and appliances properly repaired.'* (Italics ours.)" (p. 732.)

That, as we understand it, is the accepted rule and to the same effect, is *Jelf v. Cottonwood Falls Gas Co.,* supra, p. 718-719, and cases therein cited.

If a gas leak had been, or by proper inspection should have been, discovered in the *customer's line* it would then have been the duty of appellant to shut off the gas until the customer could have re-

paired his own lines. (*Jelf v. Cottonwood Falls Gas Co.*, supra, p. 719.)

It was clearly in the province of the jury to decide whether appellant failed to make a proper inspection under the circumstances and what such inspection, if made, probably would have revealed.

Under the evidence the question of the age of the break in the pipe was for the determination of the jury. Appellee's evidence showed the explosion was of natural gas. The evidence was persuasive the explosion occurred in the corner of the building where the broken pipe was found. It was there the floor boards were buckled upwards and the entire end of the building was blown out.

After the repeated notices and requests for inspection it was not necessary that appellee prove precisely what defect caused the explosion. (*Sternbock v. Consolidated Gas Utilities Corp.*, 151 Kan. 81, 98 P. 2d 162.) In that case it was held:

"Circumstantial evidence in a civil case, in order to be sufficient to sustain a verdict, need not rise to that degree of certainty which will exclude every reasonable conclusion other than that reached by the jury." (Syl. ¶ 3.)

Appellant complains its cross-examination of the tenant, LeMay, was improperly restricted in that its counsel was not permitted to interrogate LeMay concerning his statement alleged to have been made to appellant on the day following the explosion to the effect that no fumes had been noticed after December 18 and that no complaint had been made to appellant after that date. It appears the objection to such cross-examination was sustained on the ground it had already been admitted, in the testimony for appellee, that no complaints were made after December 18 and on the ground there was no testimony on direct examination concerning fumes after December 18. The tenant had stated he made no complaint after December 18. Our examination of the record discloses there had been no testimony on direct examination concerning fumes after December 18. Notwithstanding that fact it would appear the cross-examination may have been too closely restricted on that point.

We do not, however, believe the exclusion can be said to have prejudicially affected the substantial rights of appellant. Unless such prejudice affirmatively appears we are not permitted to disturb the judgment. (G. S. 1935, 60-3317.) That appellant's substantial rights probably were not prejudiced by the ruling is also indicated by the fact testified to by the witness McGee that an odor of natural gas, as distinguished from fumes, may not always be

detected; it is only detected if the odor is strong enough. In other words, the fact, if it be a fact, that no fumes from the stove were noticed after December 18 would not itself prove there was no escape of natural gas and defeat a recovery where proper inspection for gas leaks had not been made after the character of the notices shown in this case.

Appellant also complains that McGee, the division manager of appellant, was permitted over appellant's objection to testify that in his opinion the explosion resulted from natural gas. It is contended that McGee was not present at the time of the explosion, the question called for a conclusion and invaded the province of the jury. There are instances where such an objection would be entirely proper. We think this is not one of them. This witness was the division manager of appellant. The objection was not that he was unqualified to have an opinion. He could properly state his opinion based upon all the facts in his possession. Counsel might then have cross-examined him had he desired to do so, with respect to the basis, or reasons, for his opinion. Able and experienced counsel for appellant did not see fit to do that. The objection to the testimony was properly overruled.

The demurrer to appellee's evidence and appellant's later motion for a directed verdict were properly overruled.

The trial court instructed the jury on the subject of contributory negligence, to which instruction *appellee* objected. We need not discuss appellee's objection thereto. The verdict, notwithstanding the instruction, was for appellee and she has not cross-appealed.

Appellant does not object to the instruction as an improper statement of the law on contributory negligence. It is appellant's contention that since it had notices from the tenant of gas fumes only as late as December 18, 1946, the instruction compelled a verdict in its favor. The contention is based on the theory that failure to notify the company of fumes after December 18 convicted appellee of contributory negligence as a matter of law. The instruction did not so state and it did not compel a verdict for appellant. Assuming contributory negligence of the *tenant,* if it existed, could be imputed to appellee, *the owner of the building,* the fact remains the instruction submitted to the jury the question of appellee's contributory negligence. The jury did not find such negligence existed.

The judgment must be affirmed. It is so ordered.