Jesse **WAGNER**, Plaintiff-Respondent,

v.

**MISSOURI–KANSAS–TEXAS RAILROAD COMPANY, a Corporation,** Defendant-Appellant.

No. 43959.

Supreme Court of Missouri, Division No. 1.

Jan. 10, 1955.

Motion for Rehearing or to Transfer to Court en Banc Denied Feb. 14, 1955.

Carl S. Hoffman, St. Louis, Frank J. Rogers, Kansas City, for appellant.

Clay C. Rogers, James W. Benjamin, Kansas City, Sylvan Bruner, Pittsburg, Kan., Rogers, Field & Gentry, Kansas City, of counsel, for respondent.

COIL, Commissioner.

Plaintiff-respondent claimed to have fallen and injured his back while a passenger on defendant-appellant's train. Plaintiff had verdict and judgment thereon for $27,000 from which defendant has appealed, contending that the trial court erred: in refusing to direct a verdict for defendant at the close of all the evidence, and in instructing the jury. Defendant also contends that the verdict is excessive.

 The accident occurred in Kansas, and thus the substantive law of Kansas is applicable. It is the law of Kansas that: " * * * in testing the sufficiency of evidence as against a demurrer, the court shall consider all the plaintiff's evidence as true, shall consider that favorable to plaintiff, together with all reasonable inferences to be drawn therefrom and disregard that unfavorable to plaintiff, and shall not weigh any part that is contradictory, * * *." Siegrist v. Wheeler, 175 Kan. 11, 259 P.2d 223, 225 [1]. The evidence viewed in accordance with that rule justifies this statement.

Jesse Wagner, plaintiff, was a fare-paying passenger on defendant's one-coach passenger train when he entered the men's toilet room (approximately 3' x 5') at the rear corner of the coach. As one entered, there was a stool in the right far corner. Directly in front of the stool, a distance of about 17½ inches, was a wash basin. Immediately to the left of the door opening and immediately across from the wash basin was a water cooler wherein water, obtained through a spigot in the aisle of the coach, was kept and cooled. Plaintiff noticed no water on the floor of the room as he entered. He sat on the stool for about 3 or 4 minutes and while there saw a puddle of water in front of and to the left of his left foot. The puddle was six inches to a foot in diameter and ⅛" to ¼" in depth. A slow drip of water from the cooler "caused the puddle". Plaintiff stood up, and as he started to pull up his overalls with both of his hands he became unbalanced due to the usual swaying and rocking of the train. To regain his balance, he stepped to his left front with his left foot into the puddle. His left foot slipped and he fell backward, striking his lower back on the edge of the stool. He returned to his coach seat and, within five minutes, reported his fall to defendant's train conductor. They went to the toilet room where plaintiff pointed out the water on the floor. At that time water was still dripping from the water cooler. The conductor obtained plaintiff's name and age and directed him to a defendant's doctor in Emporia, Kansas. Certain other details of evidence will be mentioned in connection with defendant's specific contentions.

Defendant says that a verdict for it should have been directed because: there was no sufficient evidence of the negligence alleged; even assuming such evidence, there was no evidence of actual or constructive notice to defendant of the condition of the floor or of the defective water cooler; plaintiff's testimony as to the manner in which he fell was contrary to physical fact and therefore of no probative force; and plaintiff was guilty of contributory negligence as a matter of law. Of these in the order mentioned.

 Defendant correctly asserts that it was not an insurer of plaintiff's safety and that for plaintiff to recover there must have been substantive evidence of the specific negligence alleged. The Supreme Court of Kansas has stated the duty which defendant carrier owed to plaintiff passenger in these words: "The established rule is that a carrier of passengers for hire, * * *, is required to use the greatest skill, care and foresight practicable for safety of its passengers in the preparation and management of the means of convey-

ance * * * it furnishes for that purpose. * * *

"It is not, however, an insurer of the safety of its passengers. * * *" Picou v. Kansas City Public Service Co., 156 Kan. 452, 456, 134 P.2d 686, 689 [2], 690 [3].

Defendant's argument is that there was not sufficient evidence from which the jury reasonably could find that the presence of the water caused the floor to be dangerous or slick or slippery or unsafe or in such condition as to be likely to cause one to slip and fall.

■ We think defendant's position is not well taken. The puddle of water was close to plaintiff's left foot; it was a substantial quantity of water; plaintiff stepped into the puddle while attempting to regain his balance which the movement of the train had caused him to lose; he said his foot slipped because of the water and that he fell because he slipped. We think this was sufficient substantive evidence from which the jury reasonably could find that the water made the portion of the floor covered by it dangerous as to passengers using the toilet facilities on a moving train.

It is true, as defendant points out, that the fact that plaintiff fell, standing alone, does not convict defendant of negligence. It is also true, as defendant contends, that plaintiff did not describe the kind of floor in the toilet room (defendant's testimony, by which plaintiff was not bound, showed that it was a rough-surfaced floor of about the consistency of concrete). And it is true that plaintiff said the soles of his shoes were slick. Plaintiff's testimony concerning his shoes was that they were work shoes. In answer to the question "Did they have slick soles on them?", plaintiff answered "Yes, sir." This testimony is subject to the reasonable construction that his soles were slick to the same extent that soles of any work shoes are slick after the shoes have been worn. In any event, it is clear that, according to plaintiff, the puddle of water on the floor directly contributed to cause him to slip and fall. And, whether the floor surface was rough or smooth, the jury could reason from the facts adduced, and from their common knowledge, that a puddle of water which caused one to slip in the particular circumstances under which plaintiff slipped, constituted a condition which was likely to cause a reasonably careful person to slip and fall and that defendant so knew or in the exercise of the highest degree of care for the safety of its passengers, should have so known.

■ Contrary to defendant's contention as to lack of notice, there was substantial evidence from which the jury reasonably could find that defendant knew or should have known of the defective cooler and of the presence of water on the floor in time to have remedied both of the conditions prior to the time plaintiff fell. There was the direct testimony that a puddle of water of the size and depth heretofore noted had accumulated by reason of a slow drip from the water cooler and that this slow drip continued for at least five minutes following plaintiff's fall. This, in our opinion, was sufficient evidence from which the jury reasonably could infer that the water cooler had been defective long enough that defendant, in the exercise of the highest degree of care, could have remedied the defect and could have removed the water, the result of the defect, prior to plaintiff's fall. It is not necessary to discuss defendant's contention that generally "presumptions do not run backward." There is no necessity to indulge in any "presumption". The situation here is one in which the jury could properly reason from the known facts that a certain required thing or fact had existed for at least a certain length of time. Van Brock v. First National Bank in St. Louis, 349 Mo. 425, 431 [1], 161 S.W.2d 258, 260 [1–3]. The law in Kansas is that "Where a reasonable conclusion from the established facts and circumstances may be drawn favorable to plaintiff's case, the demurrer should be overruled notwithstanding that a reasonable conclusion might be drawn in favor of the defendant." Deselms v. Combs, 162 Kan. 15, 16, 17, 174 P.2d 107, 108 [1, 2]. And in Booker v. Kansas City Power & Light Co., 167 Kan. 327, 334, 205 P.2d 984, 990, the Kansas

court said that " 'Circumstantial evidence in a civil case, in order to be sufficient to sustain a verdict, need not rise to that degree of certainty which will exclude every reasonable conclusion other than that reached by the jury.' "

We hold that it was a reasonable conclusion from the known facts (i. e., from the evidence adduced) that the water cooler had been defective long enough, and had caused a substantial amount of water to be on the floor for sufficient time, for defendant, in the exercise of the highest degree of care for the safety of its passengers, to have remedied the conditions prior to plaintiff's fall.

■ Nor can we agree with defendant that "Plaintiff's testimony as to the manner in which the accident happened is contrary to physical facts." As we understand defendant's argument in this regard, it is largely based upon the unjustified premise that only plaintiff's left foot moved and that his right foot remained stationary, thus, defendant says, making it impossible for plaintiff to have hit the middle of his back on the edge of the stool. It is true that plaintiff said that his left foot slipped and that his right foot did not *slip*; but plaintiff also testified that he could not remember whether his right foot moved. He also said that the entire occurrence of his fall happened "quickly". Thus, there is no justifiable basis for the contention that plaintiff's feet were not far enough forward when he had completed his slip to make it possible for his lower back to strike the front edge of the stool. Defendant in this regard also contends that plaintiff would not have stepped forward in order to balance himself by reason of the "sideways motion" of the train. The evidence was that the puddle of water was in front of and to the left of plaintiff's left foot. So that plaintiff's statement that he stepped forward into the puddle meant that he stepped at an angle forward and left into the puddle. We think that there are no facts in evidence which even indicate that plaintiff could not have fallen in the manner he described. And, certainly, it is clear that

defendant has not demonstrated beyond "any reasonable doubt" that the accident could not have happened as plaintiff described it. The Kansas law in this regard is stated in Young v. Kansas City Public Service Co., 156 Kan. 624, 628, 135 P.2d 551, 554 [2–4]: "When courts cannot say it was a physical impossibility the accident happened in the manner testified to, they will leave the manner in which it occurred and its cause to the jury. * * * Before courts are warranted in ignoring or disregarding certain testimony, under this doctrine, it must be demonstrated beyond any reasonable doubt that the testimony is false and that the verdict is without support in fact or law."

■ Defendant contends that the evidence in this case demonstrates that plaintiff was guilty of contributory negligence as a matter of law. "In determining whether a plaintiff is guilty of contributory negligence when tested by a demurrer, the question must be submitted to the jury if the facts are such that reasonable minds might reach different conclusions thereon." Siegrist v. Wheeler, supra, 259 P.2d 226 [2, 3].

■ Defendant argues that because plaintiff saw the pool of water close to his left foot when he was seated on the stool, knew that the train was rocking and swaying in the same manner it had been doing before he entered the toilet room, became unbalanced while attempting to "pull up" his overalls, and made no attempt to use the handhold which defendant's evidence showed was across the window just to the right of the stool (plaintiff said he did not notice a handrail), and, because plaintiff knew that he had "slick soles" on his shoes, he was guilty of contributory negligence as a matter of law. We think, however, that under the Kansas law above quoted, the question whether plaintiff was contributorily negligent was for the jury. Defendant overlooks the fact that the entire accident happened very quickly. Whether plaintiff, under the circumstances, was bound, in the exercise of ordinary care, to have instantaneously loosened his grasp on

his overalls and grabbed the handhold in order to regain his balance, rather than to attempt to regain it by the action he took, was a jury question.

Defendant says that plaintiff's instruction 1 was erroneous because it failed to submit to the jury an essential element of plaintiff's cause of action in that there was no requirement that the jury find that the floor, by reason of the presence of the water, was slick or slippery or dangerous or not reasonably safe or that the presence of the water on the floor was likely to cause a passenger to fall.

Instruction 1, omitting the first and third paragraphs, was:

"It is the law of Kansas that a railroad company, in carrying a farepaying passenger, owes the duty to the passenger to use the greatest skill, care and foresight practicable for the safety of its passengers in the preparation, maintenance and management of its passenger coaches, and that includes the toilet facilities provided for the passengers, and the railroad company is held to the highest degree of care for the safety of the passengers, and is liable for the slightest negligence. * * *

"You are, therefore, instructed that if you shall find and believe from the evidence that the plaintiff Wagner was using the toilet mentioned in evidence, and while exercising reasonable and ordinary care for his own safety, if so, was caused to step into and slip upon water on the floor of the toilet, and was directly caused to fall and strike his back upon the stool of the toilet and was thereby directly injured, and if you find and believe from the evidence that the water, if any on the floor was caused by a leak from the water cooler mentioned in evidence, and that said leak, if any, and water upon the floor, if any, had occurred and continued for such a sufficient length of time before the plaintiff fell so that the defendant, in the exercise of the highest degree of care on its part could have known of the presence thereof, and could have removed the water before the plaintiff Wag-

ner fell, if he did so, and if you find that the defendant was negligent in causing, allowing or permitting the water to be and remain upon the floor, and if you find and believe from the evidence that the plaintiff's fall, if so, and injury, if any, was directly caused by said negligence, if any, of the defendant, then your verdict should be in favor of the plaintiff Wagner and against the defendant Railroad Company."

Defendant again points out that it was not an insurer of plaintiff's safety and that before it could be convicted of negligence or of a failure to exercise the highest degree of care in the maintenance and operation of its train and its facilities, the jury had to find that the presence of the water on the floor made the floor unsafe for passengers' use. Now it is, of course, true that the duty which defendant owed plaintiff must have been violated before the defendant could be guilty of actionable negligence. Defendant's duty was to exercise the highest degree of care to protect plaintiff in transit; to carry him safely. And it is true that there would be no violation of that duty in this case if the toilet facilities furnished plaintiff were, despite the water on the floor, safe for plaintiff's use. In other words, unless the water on the floor made the floor of the toilet room unsafe, defendant was not negligent. So that, we agree with defendant that it was an essential element of the specific negligence on which plaintiff sought to recover that the presence of the water on the floor made the toilet facilities not safe for use by passengers.

The troublesome question about the instruction is whether the jury did essentially find that the water made the floor unsafe by finding for plaintiff under the instruction as drawn. The instruction specifically hypothesized the facts from plaintiff's standpoint; that is, that the water on the floor was caused by a leak in the water cooler which had continued for a sufficient time before the fall so that defendant, in the exercise of the highest degree of care could have known of the leak and could have removed the water before plaintiff fell, that plaintiff slipped and fell because

of the water, and the instruction required the jury to "find that defendant was negligent in causing, allowing, or permitting the water to be and remain upon the floor", and that plaintiff was injured as a direct result of such negligence.

Instruction 1 also told the jury that it was defendant's duty to exercise the highest degree of care for the safety of its passengers and instruction 2 told the jury what was meant by the term "highest degree of care", and that "negligence" meant a failure to exercise the highest degree of care. So that, as we see it, by finding for plaintiff under instruction 1, the jury found that in causing, allowing, or permitting the water on which plaintiff slipped and fell to be and remain on the floor, defendant thereby failed to exercise the highest degree of care for the *safety* of its passengers.

It may be forcefully argued that a jury could not so find without necessarily including in such finding that the toilet floor with the puddle of water on it was not safe for passengers' use; that a finding of negligence upon the hypothesized facts carried with it a finding that the condition hypothesized, upon which the finding of negligence was based, was an unsafe condition, i. e., a condition which by causing and permitting to remain, defendant violated its duty to exercise the highest degree of care for the safety of its passengers. And it may be further pointed out in support of this view that defendant's instruction A made it clear that defendant was not an insurer of plaintiff's safety.

The difficulty is, however, that the instruction as drawn does not require the jury to find that water on the floor made the floor unsafe or dangerous or slippery. So that we cannot tell whether the jury found that defendant was negligent solely because it caused and permitted water on and to remain on the floor, irrespective of whether the floor was thereby unsafe for passengers' use. If the jury did so find, then it failed to properly find defendant negligent because it failed to find an essential fact ingredient of that negligence, viz., that the water made the floor unsafe for passengers' use.

Now if we could say, and we cannot, that the puddle of water made the floor unsafe or slippery and dangerous as a matter of law, then there would be no necessity for the instruction to require such a finding. We have said that the court did not err in holding that it was a jury question as to whether the water made the floor unsafe. Being a jury question, should not this essential fact element have been specifically hypothesized? We concede that the question is a close one, but we adhere to the opinion that the instruction was reversibly erroneous for failure to include the hypothesis that the water made the floor unsafe—using any language which would require a specific finding as to that essential fact issue.

For many years instructions hypothesizing the liability of municipalities for defects in streets have been held reversibly erroneous for omitting a requirement in specific language that the defect hypothesized thereby made the street not reasonably safe for travel. See: Guy v. Kansas City, Mo.Sup., 257 S.W.2d 665.

In the recent case of Reese v. Illinois Terminal R. Co., Mo.Sup., 273 S.W.2d 217, 222, an F.E.L.A. case, this court held that it was reversible error for an instruction, although hypothesizing defendant's negligence in permitting ice and snow to accumulate and remain in a certain area, to fail to submit in specific language that the area (place of work) was thereby not reasonably safe. We said in Reese: "The introductory sentence of plaintiff's Instruction No. 1 correctly but abstractly stated defendant's duty to exercise ordinary care to furnish plaintiff with a reasonably safe place to work, but the instruction did not correctly submit the negligent failure to furnish a reasonably safe place to work. In charging or submitting defendant's negligence, the instruction hypothesized that the area immediately adjacent to and surrounding the switch was covered with ice and snow which had become irregular and

uneven and that defendant was negligent in permitting the ice and snow to accumulate and remain in the stated area. Now, in no way did the instruction submit that the irregular and uneven condition was one which was likely to cause injury, that is, the instruction did not actually or in effect submit that the condition was dangerous, or not reasonably safe. See the submitted—by reason of all said facts and circumstances 'said place "was dangerous and not reasonably safe", et cetera', in Luthy v. Terminal R. Ass'n of St. Louis, Mo.Sup., 243 S.W.2d 332, 336; the required finding by a jury that the place of work was 'unsafe because (the flooring was) "old, worn, rough, depressed and uneven" ', in Schonlau v. Terminal R. Ass'n of St. Louis, 357 Mo. 1108, 212 S.W.2d 420, 424; the submitted, 'that said conditions there were likely to cause a person so using said passageway to slip and fall * * * and that said passageway there was dangerous and not reasonably safe for such use and passage,' in Fisher v. Laclede Gas Light Co., Mo. Sup., 31 S.W.2d 770, 722; and the submitted, 'defendant's roadbed and track were not in a reasonably safe condition * * * on account of * * *', in Gorham v. Kansas City & S. R. Co., 113 Mo. 408, 20 S.W. 1060. See also Winslow v. Missouri, K. & T. R. Co., Mo.App., 192 S.W. 121. We believe it could not be said that as a matter of law the condition as testified to by plaintiff and as hypothesized was unsafe, dangerous or not reasonably safe, nor did defendant concede the condition was not reasonably safe. At most, plaintiff's testimony was that the ice (which may or may not have caused plaintiff to slip and fall) was but a thin coating of ice down between the elongated ties. The question of the fact of the dangerous or unsafe character of the hypothesized condition of irregular and uneven ice and snow was a jury question. This question of fact had an essential and basic bearing upon whether defendant had the duty and negligently failed to fulfill its duty to remedy the condition, and the failure to submit such fact, in our opinion, rendered the instruction prejudicially erroneous."

Generally the only circumstance in which we have held instructions omitting specific language which required a finding of dangerous and unsafe conditions proper, are those in which it could be said as a matter of law or as a matter of common knowledge that the condition hypothesized was unsafe or dangerous. See: Brown v. Reorganization Inv. Co., 350 Mo. 407, 418 [5], 166 S.W.2d 476, 481 [9–10].

Because instruction 1 is erroneous in the respect noted, the judgment is reversed and the case remanded for a new trial.

VAN OSDOL and LOZIER, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur except WESTHUES, J., not sitting.